728 So.2d 945 (1999)
STATE of Louisiana, Appellee,
v.
Allen Wayne GIBBS, Appellant.
No. 31,370-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
*946 Louisiana Appellate Project by J. Wilson Rambo, Monroe, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Charles L. Brumfield, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, WILLIAMS & PEATROSS, JJ.
PEATROSS, J.
After a jury trial, Defendant, Allen Wayne Gibbs ("Gibbs"), was convicted of aggravated rape, a violation of La. R.S. 14:42, and sentenced to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Gibbs now appeals, urging six assignments of error. For the reasons stated herein, we affirm.

FACTS
On March 16, 1996, at approximately 10:00 p.m., the 66-year-old victim, Mary Etue, went to bed in her home in Bastrop, Louisiana. Her son and grandson, who resided with her, were not at home at the time. Later that night, she was awakened by a knock at her front door. The victim went to the door and, looking through the window panes in the door, saw Gibbs, who was wearing a white turban, standing on her front porch. At the time, she knew him only as Allen, an acquaintance of her son's. Gibbs asked the victim whether her son was home, to which she replied he was not and asked Gibbs to leave. The victim saw Gibbs leave her porch to the left and proceed around the side of her house. The victim's back door was then kicked open and Gibbs came "bounding" into her home.
Although the victim's testimony was somewhat confused about the sequence of events due to her fear, it appears that Gibbs knocked over some furnishings, grabbed the victim and threw her to the floor. Gibbs then straddled the victim and began beating her and pulling her hair. The victim testified that she screamed and tried to resist Gibbs but, "the more noise I made the worse he got." Gibbs then began choking the victim. She testified that he then raped her twice. During the last episode, he climaxed and ran *947 out the back door. The victim suffered a broken collar bone, bruised ribs and contusions to her face and neck.
The victim then called 911, telling the operator that she had been raped by a "colored boy" she knew as Allen and that he was still on her property, on her front porch. She described him as still wearing the white turban. The Bastrop Police were dispatched and arrived at the victim's home within three minutes. Gibbs, still wearing the white turban, was stopped between the victim's yard and her neighbors.
DNA profiling later revealed that Gibbs could not be excluded as the person who raped the victim. Further, a blood stain found on Gibbs' shorts was determined to match the DNA profile of the victim. Gibbs was indicted for aggravated rape and, at trial, was identified by the victim as the man who raped her.

DISCUSSION
On appeal, Gibbs asserts the following assignments of error:
Assignment of Error 3: The evidence herein is legally insufficient to sustain [Gibbs'] conviction.
After conviction, Gibbs made a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. The trial court denied this motion, stating that Gibbs was the perpetrator "beyond any doubt." On appeal, Gibbs argues that the victim misidentified him as her assailant; therefore, the trial court committed reversible error as the evidence was not legally sufficient to sustain his conviction.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Brown, 29,708 (La. App.2d Cir.9/24/97), 702 So.2d 744, writ denied, 97-2549 (La.1/30/98), 709 So.2d 703. In those instances where the defendant complains that he is not the person who committed the crime, the Jackson rationale requires the State to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008 (on rehearing), writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
Gibbs argues that the light was poor, that the victim wasn't wearing her glasses, that the victim's testimony about seeing his face was inconsistent and that he made no effort to flee from the scene or run from the police. We find, however, that despite these arguments, the evidence was sufficient to show that Gibbs was the perpetrator of this crime.
The victim was unwavering in her identification of Gibbs, whom she had seen before and knew by name. In fact, she told the 911 dispatcher that her attacker's name was Allen. She testified that she spoke to Gibbs during the encounter and had ample opportunity to observe him. In addition to the identification made by the victim, the State introduced scientific evidence that the victim's DNA was found in a blood stain on the shorts which were gathered from Gibbs the night of the rape. Further, although the extractions from the rape kit were too weak to do a full DNA profile, there was enough material to determine that Gibbs could not be ruled out as the source of the DNA present. We find, therefore, that the trial court was rightfully unimpressed with Gibbs' claim that he was not the perpetrator.
Assignment of Error 1: The Trial Court erred in overruling or denying [Gibbs'] Batson challenge to the State's striking of prospective juror number 1, Wanda Armstrong.
Assignment of Error 2: The Trial Court erred in failing to require the State to present a racially neutral explanation for striking or excusing prospective juror number 1, Wanda Armstrong, in light of the prima facia showing of systematic racial exclusion made by [Gibbs'] counsel.
At the close of voir dire, Gibbs raised an objection pursuant to Batson v. Kentucky, *948 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and La.C.Cr.P. art. 795, alleging that the State was exercising peremptory challenges based on the race of prospective jurors. The victim in this case is white and Gibbs is black. Gibbs argued that the State had exercised peremptory challenges against 9 out of 12 of the available black potential jurors. In response, the trial court stated:
The Court has gone over all the venire sheets and as I've gone through I've written down interesting remarks by some of them that I thought would concern either the State or the defense. I've also listed their races on here and their sex on here so I could keep up with who each person was. In reviewing them, the Court finds in reviewing each challenge the State made as to a person that is of the African-American race and it's apparent from voir dire that there was good cause why a person on the prosecution side would challenge that person. The Court finds based on the, apparent from the voir dire and that there was good cause and finds that there is a lack of a prima facie case.
Gibbs objected to the ruling and raised the issue again in his motion for new trial, which the trial court denied as well. At that hearing, the trial court stated:
The Court would reiterate its ruling before. I made detailed reasons for ruling at that time. There has ... that's (inaudible). It had no merit. There was no prima facie case shown. Also the Court could see clearly from the voir dire answers that were given that the State had race neutral reasons for the peremptory challenge it exercised and thus the Court denied the motion based on (inaudible). Thus the motion for new trial based on that particular reason is denied.
On appeal, Gibbs urges that the trial court erred in failing to require the prosecutor to articulate race-neutral reasons for challenging the black venire persons and particularly with regard to one prospective juror, Ms. Wanda Armstrong. La.C.Cr.P. art. 795 provides, in pertinent part:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge. (Emphasis added.)
The ultimate burden of persuasion remains on the party objecting to the challenge to prove purposeful discrimination. Whether there has been intentional racial discrimination is a question of fact. A reviewing court should afford great deference to the trial judge's evaluation of discriminatory intent and should not reverse unless the evaluation is clearly erroneous. State v. Tyler, 97-0338 (La.9/9/98), 723 So.2d 939.
In State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, the supreme court opined that a defendant could make out a prima facie case of racial discrimination by offering facts such as:
[A] pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which *949 support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination.
Taking Gibbs' assertion that the State exercised peremptory challenges against 75% of black prospective jurors as correct, he has arguably made a prima facie case of discriminatory strikes. Nevertheless, the trial court in this case indicated that it had paid close attention to the prospective jurors' answers and that there were race-neutral reasons for the challenges. Accordingly, pursuant to La. C.Cr.P. art. 795(C), the trial court did not require the State to articulate reasons for the challenges because "such reason [was] apparent from the voir dire examination...." Gibbs complains that this failure was error.
This record contains no transcript of voir dire as a whole. In a motion to supplement the record, Gibbs requested and obtained the inclusion of a transcript of the examination of Ms. Armstrong; that transcript appears in the record on unnumbered pages near the end of volume 8. Since the record contains only the transcript of the voir dire of Ms. Armstrong, only that strike is reviewable on appeal.
Unfortunately, the transcript of Ms. Armstrong's voir dire is rife with inaudible portions. Indeed, most of her answers are transcribed as inaudible. Two items, however, stand out. First, Ms. Armstrong's daughter was prosecuted and convicted in Morehouse Parish in 1989 for "a serious crime" and received probation. Second, Ms. Armstrong said that counsel for the defendant had represented her or a member of her immediate family in 1989.
Ms. Armstrong's explanation of the potential impact of these facts on her service is not fully illustrated, however, because of the inaudible portions in the transcript. The facts, nevertheless, provide race-neutral reasons for the peremptory challenge. A prospective juror may be peremptorily challenged if she has a family member with a criminal record, State v. Mamon, 26,337 (La. App.2d Cir.12/16/94), 648 So.2d 1347, writ denied, 95-0220 (La.6/2/95), 654 So.2d 1104, or if she knows defense counsel. State v. Outley, 629 So.2d 1243 (La.App. 2d Cir.1993), writ denied, 94-0410 (La.5/20/94), 637 So.2d 476. In light of these race-neutral reasons for the challenge evident from the record, we find that Gibbs failed to show that the State excused Ms. Armstrong because of her race; and, therefore, the trial court's ruling is not clearly erroneous.
Assignment of Error 6: The Trial Court erred in excluding evidence sought to be introduced by [Gibbs] to contradict or counter DNA evidence offered by the state on the issue of the identity of the perpetrator of this offense.
Subsequent to the attack in the instant case, Gibbs was developed as a suspect in an earlier rape of an elderly woman. Gibbs lived approximately .2 miles from the first victim and .3 miles from the victim in the instant case. The victim in the earlier rape, however, who suffers from Alzheimer's disease, had described her attacker as a white male. Nevertheless, in April 1997, DNA analysis confirmed that Gibbs could not be excluded as the source of the semen found on a nightgown recovered from the scene of the first victim's attack; the analyst gave probabilities of 1 in 3,472,257,260 that the sample came from another African-American and 1 in 2,652,622,718,859 that it came from a Caucasian, meaning, it is much more likely to occur in an African-American male. On May 14, 1997, Gibbs was indicted for the aggravated rape of this first victim.
On May 15, 1997, the State filed a notice of intent to use the evidence of the attack on the first victim as other crimes evidence in Gibbs' trial for the instant charges. A Prieur hearing was conducted to determine the admissibility of the evidence and on August 15, 1997, the trial court ruled the evidence admissible and found that its probative value outweighed its prejudicial effect. The court indicated that it would issue written reasons for the ruling, but no such reasons appear in the record.
The State did not introduce this evidence at trial. In brief, Gibbs argues that this *950 decision was made because the first victim had described her attacker as white. At trial, however, the State argued:
Your Honor, and let me state for the record my reasons for not calling [the first victim] have to do one with her physical condition at this time but two, with the fact that her family absolutely refused to allow me to put her ... well, her family does not want me to put her on the stand. I can do it. I can subpoena her. I can put her on the stand and I can make her testify and I chose not to do that. That was my decision.
Although the State elected not to put the other crimes evidence before the jury, Gibbs attempted to introduce it. Gibbs, however, did not call the first victim to testify either:
Court: Have you subpoenaed her for this trial and she refused or failed to show up?
Defense counsel: No, I did not subpoena her. Again, my reason there was I hear Alzheimers is a disease that I think affects the memory.
Court: That's correct.
Defense counsel: I do know that at some point in time shortly after she was attacked she gave a statement to a police officer who was gathering information to investigate the crime.... [B]ut just to answer your query, no, I have not subpoenaed her.
Court: So she will not be testifying is what you're telling me, correct? I'm just trying to get to where we're going.
Defense counsel: That's correct.
Gibbs sought to introduce the DNA analysis and the testimony of two police officers who interviewed this first victim and heard her describe her attacker as white. Although the court cautioned Gibbs that this evidence could be very damaging to him, he maintained his intent to offer the evidence in an effort to show that the first victim's attacker, and consequently the instant victim's attacker, was a white man.
After very thorough argument on the issue, the trial court ruled that the DNA evidence was relevant and admissible, but the testimony from the interviewing officers as to what the first victim told them was inadmissible hearsay and more prejudicial than probative. Gibbs objected to the court's ruling and, on appeal, argues that the trial court's ruling excluding as hearsay the officers' testimony about the description of the first victim's attacker impermissibly limited his constitutional right to present a defense.
A criminal defendant has the constitutional right to present a defense. U.S. Const. amend. 6; La. Const. art. 1 § 16; Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Van Winkle, 94-0947 (La.6/30/95), 658 So.2d 198. Evidentiary rules may not supersede this fundamental right. Moreover, the defendant may always assert that someone else committed the crime. Van Winkle, supra.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Evidence that another rape victim living in the same area as the instant victim identified her attacker as white and that the attacker's DNA matched the DNA of this black defendant is relevant to the weight to be given the DNA evidence in this case.
The DNA evidence, however, loses its relevancy to Gibbs' defense if the statement made by the first victim describing her attacker as a white male is not admitted. Since the first victim did not testify, the testimony of the two officers concerning her statements to them were unreliable hearsay and properly excluded. La. C.E. art. 801. We also note that even if the first victim had testified, the fact that she suffered from Alzheimers tends to make her own statements unreliable, regardless of the element of hearsay. We find, therefore, that the trial court did not err in disallowing such evidence.
Assuming, arguendo, that the exclusion of this evidence was error, there is no possibility that the exclusion contributed to the conviction. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Unlike Van Winkle, the forensic evidence in this case is unequivocal. The probability *951 that the semen on the first victim's nightgown came from a person other than Gibbs, who is an African-American, is roughly 1 in 3 billion. Both of the rape victims lived within walking distance of Gibbs' home. The victim in the instant case positively identified Gibbs as her attacker and knew him by name. Police found Gibbs at the scene of the crime approximately two minutes after its completion, and the DNA found on his shorts was linked to this victim's DNA, excluding others at a probability of 1 in more than 300 million. We reiterate, therefore, that the trial court's exclusion of the evidence was proper.
Assignment of Error 4: The Trial Court erred in imposing an excessive sentence upon appellant
Assignment of Error 5: The Trial Court failed to articulate for the record those considerations taken into account and the factual basis therefore in imposing [Gibbs'] sentence in contravention of the requirement of La.C.Cr.P. art. 894.1.
We note that Gibbs failed to file a motion to reconsider sentence pursuant to La.C.Cr.P. art. 881.1. Thus, our review is limited to the claim that the sentence is unconstitutionally excessive. State v. Park, 30,394 (La.App.2d Cir.2/25/98), 707 So.2d 1058; State v. Roberts, 31,219 (La.App.2d Cir.9/23/98), 718 So.2d 1057.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Caraway, 28,769 (La. App.2d Cir.10/30/96), 682 So.2d 856. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
In sentencing Gibbs to life imprisonment without benefits, the trial court commented:
I think that you should be taken away from our community where you can no longer prey upon the elderly citizens where you can brutally rape them or beat them.
. . .
I would like the record to reflect and there to be a minute entry in case someone down the line decides to review this case and give it to a governor or pardon board to determine whether or not your sentence should ever be pardoned or if your sentence should be commuted. That based upon the fact that this is a crime against person, this is a violent crime, and the facts of these two crimes, this Court would be strongly opposed ... in fact, adamantly opposed to any commutation of sentence or governor's pardon even if it is way down the line.
Gibbs broke into the home of the terrified 66-year-old victim, tackled her to the floor, brutally beat her about the head, broke her collarbone, strangled her until she nearly passed out and raped her twice. In addition, there was very convincing evidence that Gibbs had committed a similar rape upon another elderly woman approximately one year before. Gibbs has utterly failed to show how the imposition of the statutorily mandated life sentence is excessive in light of his abominable conduct and his similar criminal history.

Error Patent Review
No errors patent were noted. Although the trial court did not give Gibbs credit for time served in accordance with La.C.Cr.P. art. 880, after the 1997 amendment of that statute, that provision is self-executing.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Anthony Wayne Gibbs, is affirmed.
AFFIRMED.