JjNORRIS, Chief Judge.
Madison was found guilty of distribution of cocaine. After the trial, the state filed a habitual offender bill of information and Madison was adjudicated a third felony offender. Madison was sentenced to life in prison at hard labor without benefit of parole, probation or suspension of sentence. He now appeals his sentence, urging three assignments of error. Finding an inadequate Boykin colloquy during a predicate guilty plea, we vacate his adjudication as a third felony offender, adjudicate him a second felony offender and remand to the trial court for re-sentencing.

Facts

On January 7, 1998, Madison sold seven rocks of crack cocaine to an undercover officer and he was indicted for distribution of cocaine as a second and subsequent offender. La. R.S. 40:976, 982. On October 28, 1998, the jury returned a unanimous verdict, finding him guilty as charged. About two weeks later, a habitual offender bill of information was filed alleging the following convictions: distribution of cocaine; 10/28/98; attempted crime against nature, 6/15/90; and possession of cocaine, 5/10/94. Madison filed a motion to quash the habitual offender bill of information, which was denied.
A habitual offender hearing was held. The court adjudged Madison a third felony offender and sentenced him to the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Madison appeals the sentence, urging three assignments of error.

Law and Analysis: Voluntariness of Pleas

Madison argues that his prior guilty pleas could not be used as a basis for adjudicating him a third felony offender *922 because the court failed to advise him of | j>La. R.S. 15:529.1 and 40:983 before he entered each of the pleas.[1]
A guilty plea is valid only if it was free and voluntary on the part of the defendant. State v. Nuccio, 454 So.2d 93 (La.1984); State v. Watts, 550 So.2d 711 (La.App. 2d Cir.1989); State v. Hill, 30,552 (La.App.2d Cir.5/13/98), 714 So.2d 814; State v. Jackson, 31,849 (La.App.2d Cir.3/31/99), 734 So.2d 54; La.C.Cr.P. art. 556.1. Under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the decision to plead guilty is not free and voluntary unless the defendant was advised of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers. An express and knowing waiver of those rights must then appear on the record; an unequivocal showing of a free and voluntary waiver cannot be presumed. Id.; State v. Morrison, 599 So.2d 455 (La.App. 2d Cir.1992); State v. Age, 417 So.2d 1183 (La.1981); State v. Nabors, 569 So.2d 255 (La.App. 2d Cir.1990). The record must conclusively show that a defendant was advised of his Boykin rights and that he waived them. State v. Brew, 593 So.2d 447 (La.App. 2d Cir.1992).
The defendant must also be informed of what the plea connotes and the consequences of the plea, including the permissible range of sentences. State v. Watts, supra; State v. Hill, supra; State v. Jackson, supra; La.C.Cr.P. art. 556.1. However, a court is not required to inform a defendant that his guilty plea may be used as a basis for the filing of a future multiple offender bill. State v. Nuccio, supra; State v. Jackson, supra; State v. Jones, 28,929 (La.App.2d Cir.4/2/97), 691 So.2d 858.
A review of the record shows that in his predicate guilty plea of attempted aggravated crime against nature, Madison was represented by counsel, he was advised of his right to trial by jury, the right to face his accusers, and the right Lagainst self-incrimination. The court also asked him his age, his education, and if he was able to read and write. In this prior plea, Madison was adequately informed of his rights, and the judge ascertained that he was capable of understanding, and in fact did understand and waive each of his rights. In sum, Madison was advised of all the necessary rights in order for this plea to be free and voluntary, and failure to inform him that his guilty plea could be used as a basis for the filing of a future multiple offender bill did not make his plea any less free and voluntary.
However, as for the May 10,1994 plea of guilty for possession of cocaine, in the colloquy, the trial judge stated:
You can have a trial on these various charges. Some of them carry a six-person jury all of which would have to agree and some of them carry a 12-person jury and 10 out of 12 would have to agree. Whatever went to trial the jury would be instructed that you’re presumed innocent until each element of the crime necessary to constitute your guilt had been proven beyond a reasonable doubt. By pleading guilty, you’re giving up that presumption of innocence. You’re giving up your right to remain silent. You’re giving up the right to confront your accusers and have your attorney cross examine them in open court and you’re giving up the right to call your own witnesses to testify. Do you understand the rights that you give up by pleading guilty?
In State v. Brew, supra, this court held that a similar colloquy was insufficient in obtaining a defendant’s waiver of a jury trial. In that case, the trial judge told the *923 defendant that “during any jury trial” he had “the. right to confront your accusers and to compel testimony on your behalf from your witnesses” and that by entering the plea, he was waiving those rights. Id. He further informed the defendant that if he were to go to trial and was convicted, “that is, the jury finds you guilty,” he would have a right to appeal and have an attorney appointed at no cost if he could not afford one, and that “by entering a plea of guilty you are waiving or giving up their [sic] rights.” Id. This court found that the judge never told the defendant that by pleading guilty he was waiving his right to a jury trial, and as such the predicate conviction was constitutionally infirm. Id.
^Similarly, in this case, though the judge discussed the right to jury trial, he never expressly told Madison that he would be giving up this right by pleading guilty. He did inform Madison that he would be giving up his presumption of innocence, his right to remain silent, his right to confront his accusers and have his attorney examine them, and the right to call his own witnesses. However, the record does not show that Madison expressly and knowingly waived his right to jury trial, and as such a free and voluntary waiver cannot be presumed. State v. Morrison, supra; State v. Nabors, supra; State v. Age, supra; State v. Brew, supra; See also State v. Arnold, 30,282 (La.App.2d Cir.1/21/98), 706 So.2d 578 (finding that a defendant who had specifically waived his right to a jury trial on his murder charges did not also waive his right to a jury trial on his firearm charge pursuant to an amended indictment). This conviction cannot be used as a predicate for the instant habitual offender adjudication.

Equal Protection

Madison alleges he was the first individual ever sentenced in Morehouse Parish under the habitual offender law. He concludes from this that he was a victim of arbitrary application of the habitual offender law and that his sentence should be declared excessive under the Louisiana Constitution. Madison did not raise this issue in his motion to quash, in argument to the trial court, or by motion for new trial; constitutional issues can not be raised for the first time on appeal. Deloch v. Whitley, 96-1901 (La.11/22/96), 684 So.2d 349; State v. Hookfin, 601 So.2d 320 (La.App. 4th Cir.1991). Furthermore, even if we were to consider this issue, we would find that Madison did not make the requisite showing in order to prove a violation of his equal protection rights.[2]
|RWe have also reviewed the entire record and find nothing else we consider to be error patent. La.C.Cr.P. art. 920(2). Although the trial court did not give Madison credit for time served in accordance with La.C.Cr.P. art. 880, the 1997 amendment of that statute makes credit for prior custody self-operating even on a silent record. State v. Pickrom, 31,987 (La.App.2d Cir.5/5/99), 732 So.2d 800; State v. Gibbs, 31,370 (La.App.2d Cir.2/24/99), 728 So.2d 945.

*924
Decree

For the foregoing reasons, Madison’s adjudication as an habitual third felony offender is vacated and he is adjudicated an habitual second felony offender. This case is remanded to the district court for re-sentencing in accordance with the law.
HABITUAL OFFENDER ADJUDICATION AS THIRD FELONY OFFENDER VACATED, ADJUDICATED AS SECOND FELONY OFFENDER, REMANDED FOR RE-SENTENCING.
Before NORRIS, STEWART, GASKINS, CARAWAY and DREW, JJ.

. La. R.S. 40:983, which was repealed in 1995, only applied when a defendant pled guilty to first-offense possession of a controlled dangerous substance. Since we find the Boykin colloquy inadequate in Madison’s guilty plea to his first-offense possession charge, we do not address this issue.

. The entirety of Madison's evidence on this issue was Brumfield’s testimony at the habitual offender hearing, who on cross-examination stated that since he began working in Morehouse Parish in 1989, he did not recall having filed a habitual offender bill against anyone other than Madison. He additionally stated that he did not know whether any other prosecutor in his office has filed a habitual offender bill. This is wholly inadequate to show selective enforcement deliberately based upon race, religion or other arbitrary classification. See State v. Badon, 338 So.2d 665 (La.1976); State v. Overton, 337 So.2d 1201 (La.1976); State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Madison, 345 So.2d 485 (La.1977). Furthermore, the record does not support any claim that Madison was deliberately targeted based upon race, religion, or other arbitrary classification.