750 So.2d 398 (2000)
STATE of Louisiana, Appellee,
v.
Thomas Ray JOHNSON, Appellant.
No. 32,910-KA.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2000.
Rehearing Denied February 24, 2000.
*401 Bobby L. Culpepper, Jonesboro, Counsel for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, A. Scott Killen, Assistant District Attorney, Counsel for Appellee.
Before GASKINS, CARAWAY, KOSTELKA, JJ.
KOSTELKA, J.
A unanimous jury convicted Thomas Ray Johnson ("Johnson"), as charged, with distribution of cocaine, La. R.S. 40:967. After a subsequent adjudication as a third felony habitual offender, La. R.S. 15:529.1, the trial judge sentenced Johnson to life imprisonment without benefit of parole, probation or suspension of sentence. Johnson now appeals his conviction and sentence. We affirm.

FACTS
Over an approximate two-month period, Officer Harmon Winters ("Winters") and Detective Greg Dunn ("Dunn") of the Natchitoches City Police Department traveled on various occasions to Lincoln Parish to participate in undercover narcotics operations. Both Winters and Dunn participated in the operations by making street-level purchases of illegal drugs. During Winters' visits to Lincoln Parish, he became familiar with Johnson.
On September 25, 1997, Winters and Dunn traveled to Lincoln Parish and met with the local coordinator for the operations, Officer Chris Bittick ("Bittick") of the Ruston Police Department. Bittick provided Winters and Dunn a truck, drug purchase money and an audio body mike which allowed the undercover officer to send a distress signal in case of an emergency. The vehicle was also equipped with permanently attached video equipment designed to record drug purchases made from the truck.
After meeting with Bittick, Winters and Dunn were joined by an informant, Tim Underwood ("Underwood"). Winters, *402 Dunn and Underwood then drove to a house located at 1610 Cornell Street where Winters had seen Johnson on a number of occasions. Bittick traveled in a separate car to a location about one eighth of a mile from the house so that he could monitor the situation.
When Dunn dropped off Winters and Underwood near 1610 Cornell Street, he noticed Johnson and Ernest Johnson ("Ernest"), Johnson's first cousin, in the front yard of the house.[1] Winters and Underwood walked to the house and up the driveway to the area where Johnson and Ernest were standing. After Underwood introduced him to Johnson, Winters asked Johnson for an "eight ball." Johnson replied that he did not have it and that he needed to make a phone call. Johnson told Winters to go in the back yard and wait. Winters and Underwood complied. From the back yard, Winters saw Johnson approach a small pickup truck that was in Johnson's yard. Johnson "handed the driver some." The driver handed Johnson some money which he placed in his pocket.
Johnson then walked toward and stopped within a few feet of Winters. Winters noticed an item in Johnson's hand. Johnson indicated to Winters that he had just learned the police were watching his house. At this point, Ernest approached Johnson and whispered in his ear.
Johnson handed the item in his hand to Ernest and walked a couple of feet away. Ernest informed Winters that the price was $150 and handed the item, a little plastic bag containing crack cocaine, to Winters. Winters paid Ernest and inspected his purchase. Ernest then walked to Johnson and handed him the money. Ernest and Johnson then walked to the front yard together.
Dunn had parked the truck on a side street near Johnson's house. Winters and Underwood left the back yard and went directly to the truck. Winters placed the crack cocaine into an evidence envelope, made several notes on it concerning the transaction, and then secured the envelope in the truck's glove box. Later that day, Dunn and Winters met with Bittick and transferred the envelope to him. Field and crime lab tests determined the substance contained in the envelope to be cocaine. Police arrested Johnson on October 3, 1997.

DISCUSSION

SUFFICIENCY OF THE EVIDENCE
Contesting the credibility of the police officers' testimony, investigation procedures, and police report in motions for new trial and post-verdict judgment of acquittal, Johnson claims that evidence was insufficient to convict.
When issues of both sufficiency of the evidence and trial errors are raised on appeal, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731 (La.1992). The proper standard for appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d *403 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
The statutes concerning the crime of distribution of cocaine and principals are provided below.
La. R.S. 40:967 provides, in pertinent part:
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II....
La. R.S. 14:24 provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Winters' testimony showed that Johnson provided the cocaine to Ernest who in turn sold it to Winters. Johnson received the proceeds of the sale from Ernest.
Underwood, however, testified that Johnson did not sell any drugs to Winters, but instead, asked Underwood and the officer to leave. Underwood admitted to convictions for simple burglary, disturbing the peace and unauthorized use of a movable. At the time of the trial, Underwood was incarcerated on two counts of distribution of crack cocaine stemming from the efforts of Dunn and Winters.
Ernest testified that he sold the cocaine to Winters and that Johnson was not present when the sale occurred.
Although Johnson contests the credibility of Winters' testimony, it is not the function of the court of appeal to evaluate the credibility of the witnesses. State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984), citing State v. Richardson, 425 So.2d 1228 (La.1983). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The factual determination concerning conflicting testimony will not be disturbed on review unless it is clearly contrary to the evidence. State v. Taylor, 621 So.2d 141 (La.App. 2d Cir.1993), writ denied, 93-2054 (La.02/11/94), 634 So.2d 371.
In this case, the jury chose to accept Winters' testimony and reject that of defense witnesses. Moreover, the jury heard testimony regarding inconsistencies in the police report and the length and type of investigations conducted and obviously accepted the explanations offered by the police officers involved. With Winters' eyewitness account of the transaction, we find these conclusions to be supported by the record. Accordingly, when viewed in the light most favorable to the state, the evidence presented was sufficient to support the distribution of cocaine conviction.

NEW TRIAL
Johnson also claims that the trial court erred, as a matter of law, in failing to grant his motion for new trial which alleged that two jurors were dishonest in their responses regarding relatives who had drug addictions. Johnson also claims that one of the jurors was guilty of "juror misconduct" because she knew that Johnson had served time for a drug offense and had informed the other jurors of that fact.[2] After a hearing, the trial court denied the motion for new trial.
The motion for new trial is based upon the supposition, and requires a showing, that injustice has been done the *404 defendant. La.C.Cr.P. art. 851. Regarding the misstatements of jurors, the defendant must show that he was prejudiced by the misstatement for a new trial to be warranted. State v. Baxter, 357 So.2d 271 (La.1978); State v. Neal, 550 So.2d 740 (La.App. 2d Cir.1989), writ denied, 556 So.2d 55 (La.1990). In this case, because Johnson was convicted by a unanimous jury, in a case where only ten votes were required for conviction, he cannot show prejudice regarding the statements of the two jurors on voir dire. Neal, supra. Moreover, at the post-trial hearing, the two jurors, Gloria Moore and Jackie Foster, clearly denied that they had relatives with drug addiction problems. Foster also denied that she knew defendant had served time in the penitentiary for a drug charge or that she told other jurors of this fact. With Johnson failing to present any evidence to contradict this testimony, we find no error in the trial court's denial of his motion for new trial.

MISTRIAL
Johnson contends that evidence of other crimes was improperly admitted through the following testimony of Winters:
A. Okay. We were in the back yard a couple of minutes, not long then Tommy Ray come to the back yard but there was some other vehicleother people in the yard. There was a little small pick up truck that was backed up in his yard. He goeshe went to the pick up truck first
Q. He being the defendant?
A. Yes. Mr. Johnson. Mr. Tommy Ray Johnson.
Q. Okay.
A. He went to the pick up truck first and he handed the driver some. The driver handed him some money. He put it in his pocket
Defendant objected to this testimony as constituting other crimes evidence and then requested a mistrial.
The trial court denied the motion, ruling that the testimony was an integral part of the transaction for which Johnson was on trial. Therefore, no Prieur notice was necessary. Moreover, the court found the state had fulfilled the notice requirement by the report it furnished to Johnson.
A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Blackwell, 30,281 (La. App.2d Cir.11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.02/13/98), 709 So.2d 755.
We find no error in the trial court conclusion. Because there was no testimony as to the nature of the item that changed hands, i.e., whether it was an illegal substance, this evidence fails to qualify as other crimes evidence.
Moreover, even assuming for the sake of argument that the testimony was evidence of a criminal transaction, it was properly admitted. La.C.Cr.P. art. 720 excludes from the obligation of the state to give notice of other crimes evidence evidence of offenses which relate to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceedings.
Here, Winters told Johnson that he wanted an eight ball of cocaine. Winters was told to wait in the back yard and he did. Johnson returned a few minutes later and stopped by the truck on the way to Winters. Winters observed the transaction that occurred at the truck. Only then did the Johnson and Ernest approach Winters and sell the cocaine to him. Therefore, the stop at the truck was an integral part of the transaction.
Johnson's argument is without merit.

ADMISSIBILITY OF CRIME LAB REPORT
Johnson next contests the admissibility of the crime lab report, claiming that it was not signed by the person in charge of the facility; the document was *405 signed by Linda Armstrong ("Armstrong").
In this case, the state served Johnson with a copy of the certified crime lab report on November 19, 1997; the report clearly shows the signature of the certifying official as Armstrong. The jury trial commenced on December 15, 1998. Although Johnson was notified nearly a month prior to trial that the state intended to use the certified copy of the crime lab report, he made no objections to the use of the crime lab report prior to trial. It was only at trial that Johnson objected to the introduction of the certificate on the grounds that Armstrong was not qualified to sign the certificate. The state asserted that Armstrong was director of the facility in Monroe which processed the evidence.
We find no error in the admission of the certificate of analysis. Considering both the provisions of La. R.S. 15:499 and the state's explanation that Armstrong was the director of the facility in Monroe, the certificate of analysis met all of the requirements of La. R.S. 15:499 and was admissible under La. R.S. 15:500 as prima facie evidence of the facts shown therein. Moreover, as in the case of the person who performed the analysis, any objection to Armstrong's signature or qualifications appropriately should have been made by subpoenaing the witness for trial.[3]

ERNEST'S ARREST
In assignments of error numbers six and seven, Johnson asserts that the trial court erred in not allowing defense counsel to question Ernest Johnson concerning the time and circumstances of Ernest's arrest. Specifically, Johnson claims that Ernest's arrest, when he appeared for trial in response to a defense subpoena, showed the state's attempt to pressure the witness into not testifying on defendant's behalf. The court found the testimony inadmissible due to its highly prejudicial nature. We affirm this ruling.
Although every witness, by testifying, subjects himself to examination relative to his criminal convictions, no inquiry is permitted into matters for which there has only been an arrest. La. C.E. art. 609.1. Nevertheless, this general rule gives way when a witness has pending charges against him and the cross-examiner seeks to show the fact-finder that these pending charges may bias or influence the testimony of the witness. State v. Vale, 95-1230 (La.01/26/96), 666 So.2d 1070. Any confrontation errors, such as an improper limiting of questioning, are subject to the harmless error rule. State v. Butler, 30,798 (La.App.2d Cir.06/24/98), 714 So.2d 877, writ denied, 98-2217 (La.01/08/99), 734 So.2d 1222.
In this case, Johnson can show no prejudice in the exclusion of the testimony even if that exclusion was error. Ernest was not part of the state's case in chief; rather, he was a defense witness who testified entirely in favor of Johnson. Accordingly, the testimony was properly excluded.

HABITUAL OFFENDER ADJUDICATION
In assignments of error numbers ten, eleven and fourteen, Johnson challenges his adjudication as an habitual offender. He claims that his 1990 guilty plea was defective, the law establishing the ten-year cleansing period was applied ex post facto, the penitentiary pack introduced against him was defective, and that Johnson was not identified as the person who committed the predicate offenses.

1990 Guilty Plea
Regarding Johnson's 1990 guilty plea to attempted possession of marijuana with intent to distribute, Johnson contends that the court failed to ascertain if he understood the consequences of entering a guilty plea after Johnson indicated that there *406 was a lot of pressure on him. Moreover, Johnson argues that the court failed to inform Johnson of the "enhancement possibility" with regard to the guilty plea and that he could later be charged as an habitual offender. Finally, Johnson claims that the record shows that Johnson admitted to possession of marijuana rather than possession of marijuana with intent to distribute.
The following exchange forms the basis for Johnson's claim regarding his understanding of his guilty plea:
Q. And you understand that when you plead Guilty, you waive or give up all these rights we have been talking about?
A. I understand.
Q. Okay. Is it your desire to waive or give up these rights and enter your plea of Guilty to the Attempted charge and do you in fact so waive or give them up?
A. I do. But
Q. You do but what?
A. I don't know; it's a lot of pressure on me.
Q. You know, gotta make a decision one way or the other.
A. I'm making a decisionguilty.
Q. Okay, then you do waive or give up the rights that I've been talking about?
A. Yes.
Citing Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), Johnson argues that once he said, "I don't know; it's a lot of pressure on me," the trial judge had an obligation to inquire into the cause of the pressure.
A review of the 1990 guilty plea transcript reveals not only that Johnson was represented by an attorney, but also that all of his Boykin rights were thoroughly explained. Where the record establishes that an accused was informed of and waived his rights to trial by jury, to confrontation, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. State v. Youngblood, 32,003 (La.App.2d Cir.05/05/99), 740 So.2d 687.
Here, the court made other advisements and posed questions to Johnson to ensure the plea was knowingly and voluntarily entered. The questions included requests for information concerning defendant's date of birth, educational level and mental health. In response to these questions, Johnson indicated that he was born on September 7, 1950, graduated from high school and obtained additional education in the field of automobile repair. Furthermore, he had never been treated for any type of mental illness or defect.
Considering the totality of the colloquy, we find Johnson's statement that he was under pressure insufficient to satisfy his burden of proving that the guilty plea was involuntary. Johnson was a forty-year-old, educated man who engaged in an extensive discussion of rights and facts with the trial judge. He expressed a clear understanding of those rights and never stated that he did not wish to enter a plea. Under these facts, we find the guilty plea to have been freely and voluntarily given.
We also reject Johnson's argument relating to the failure of the trial court in 1990 to inform him that he could later be charged as an habitual offender. There is no requirement that a defendant be informed by a court, prior to the court's acceptance of that guilty plea, that such a plea may be used as a predicate in a future enhancement proceeding. State v. Nuccio, 454 So.2d 93 (La.1984); State v. Madison, 32,432 (La.App.2d Cir.10/27/99), 743 So.2d 920; State v. Longo, 560 So.2d 530 (La. App. 1st Cir.1990).
We find no merit to Johnson's final claim that he admitted only to possession of marijuana. The guilty plea colloquy clearly shows that the trial court informed Johnson of the crime for which he was pleading guilty-attempted possession of marijuana with intent to distribute-and separately explained possession, distribution and attempt. Johnson indicated that *407 he understood both the original charges and those for which he was pleading guilty. Accordingly, we reject this argument.

Validity of Ten-Year Cleansing Period
In light of our discussion of this issue in State v. Boykin, 29,141 (La.App.2d Cir.01/31/97), 688 So.2d 1250, we also reject Johnson's argument that the ten-year cleansing period of La. R.S. 15:529.1 violates the constitutional prohibition against ex post facto application of the law. See also State v. Brady, 97-1095 (La.App. 4th Cir.02/02/99), 727 So.2d 1264; State v. Roach, 97-1852 (La.App. 4th Cir.11/26/97), 706 So.2d 491.

Validity of Penitentiary Pack
Johnson finally makes several arguments relating to the individual certification of the documents which formed the penitentiary pack introduced to prove his habitual offender status and contends that the state failed to prove his identity as the predicate offender.
We first note that while Johnson generally objected to the penitentiary pack at his habitual offender hearing, he nowhere raised this specific ground in his written objection which the court required him to file. He, accordingly, is precluded from now raising the issue on appeal. La. C.Cr.P. art. 841; State v. Clayton, 427 So.2d 827 (La.1982). Moreover, Johnson's contention that La.R.S. 15:529.1(F) requires certification of each individual document has been specifically rejected by this court in State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.06/26/98), 719 So.2d 1048.
We also find adequate proof of identity in the record before us.
In an habitual offender proceeding, the state is required to prove only a prior felony conviction and that the defendant is the person convicted of the earlier offense. State v. Carlos Johnson, 31,448 (La.App.2d Cir.03/31/99), 747 So.2d 61, White, supra.
The state offered the expert testimony of James D. Kavanaugh ("Kavanaugh") of the Ruston Police Department, an expert witness in the field of fingerprint analysis. Kavanaugh testified that the fingerprints from the instant case matched the fingerprints of all the other fingerprints he was provided and identified those as belonging to Johnson. The documents examined by the officer included fingerprint cards for the instant case, the attempted possession of marijuana with intent to distribute case (docket number 33,751) and the distribution of marijuana case (docket number 31,178). Such identification is adequate proof of Johnson's identity. Id. We, therefore, reject this argument and affirm Johnson's third felony offender adjudication.

EXCESSIVE SENTENCE
After Johnson's adjudication as a third felony offender, the court sentenced him to a mandatory life sentence without benefit of parole, probation or suspension of sentence. Johnson now complains that this sentence is constitutionally excessive based upon factors such as his age, family background and the non-violent nature of his convictions.
The definition of criminal conduct and the provisions of penalties for such conduct is a purely legislative function. State v. Carlos Johnson, supra. Pursuant to this function, the legislature enacted the habitual offender statute which has been held on numerous occasions to be constitutional. State v. Walter Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. Since that statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed constitutional. Id.
Although a punishment required by statute may constitute excessive punishment, the appellate courts of this state have recognized that declaring a sentence under the Habitual Offender Law constitutionally excessive should be a rare act, not a commonplace *408 practice. State v. Dorthey, 623 So.2d 1276 (La.1993).
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Carlos Johnson, supra. Additionally, in determining whether Johnson has met his burden, the trial judge must consider that the goals of the Habitual Offender Law are to deter and punish recidivism. Id. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the Habitual Offender Law should occur only in rare instances. Id.
After close scrutiny of the record before us, we cannot find that Johnson is the "exceptional" defendant for which downward departure from the mandatory statutory minimum is required. Johnson's criminal history reveals a pattern of law violations stemming from 1972. Previous jail and probationary periods relating to other drug convictions have failed to deter further, and more serious, drug activity. Indeed, Johnson was on parole at the time of his commission of the present offense. In addition to the drug charges alleged in the habitual offender bill, defendant has a 1984 marijuana conviction, a theft conviction and numerous traffic convictions including a DWI. Considering these factors, we find that Johnson has failed to rebut the presumption of constitutionality of this mandatory minimum sentence. The chosen sentence is tailored to the culpability of this offender and does not shock the sense of justice. Accordingly, this assignment of error lacks merit.

ABANDONED ASSIGNMENTS OF ERROR
Because Johnson has failed to brief or argue assignments of error numbers one, three, five and fifteen, they are considered abandoned. Nor does a mere statement of an assignment of error in a brief constitute briefing of the assignment. State v. Toney, 26,711 (La.App.2d Cir.03/01/95), 651 So.2d 387; State v. Williams, 632 So.2d 351 (La.App. 1st Cir. 1993), writ denied, 94-1009 (La.09/02/94), 643 So.2d 139.

CONCLUSION
For the foregoing reasons, Johnson's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
GASKINS, CARAWAY, PEATROSS, KOSTELKA, and DREW, JJ.
Rehearing denied.
NOTES
[1] Ernest Johnson's name is spelled "Ernest" throughout the court transcript; however, it is spelled "Earnest" in defendant's brief.
[2] The appropriate procedure for raising the issue of false statements made by jurors during voir dire is a motion for mistrial pursuant to La.C.Cr. P. art. 775.
[3] Compare State v. Wiley, 614 So.2d 862 (La. App. 2d Cir.1993); State v. Mitchell, 606 So.2d 17 (La.App. 5th Cir.1992).