# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1049


STATE OF LOUISIANA

VERSUS

JARED PAUL PONTIFF


**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. CR627-13
HONORABLE STEVE GUNNELL, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Jared Paul Pontiff**

**Michael Cade Cassidy**
**District Attorney**
**Stacey C. Naquin**
**Assistant District Attorney**
**Thirty-First Judicial District Court**
**P. O. Box 1388**
**Jennings, LA 70546**
**(337) 824-1893**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**EZELL, Judge.**

On November 18, 2013, the defendant, Jared Pontiff, was charged by bill of information with two counts of aggravated rape, violations of La.R.S. 14:42. On that same date, Defendant entered pleas of not guilty to the charges. Recognizing that aggravated rape must be charged by grand jury indictment, the state amended the bill of information on January 27, 2014, to charge Defendant with one count of oral sexual battery of D.B., a violation of La.R.S. 14:43.3, and with one count of sexual battery of K.B., a violation of La.R.S. 14:43.1.[1] Defendant's jury trial began on January 27, 2014, and ended on February 4, 2014, with the jury returning a verdict of not guilty of oral sexual battery of D.B. and guilty of sexual battery of K.B.

On February 10, 2014, Defendant filed a motion for new trial, and on February 19, 2014, Defendant filed a motion for judgment of acquittal. The trial court denied both motions and proceeded to sentencing after asking Defendant if he was ready for sentencing. After Defendant pronounced his readiness for sentencing, the trial court sentenced Defendant on his sexual battery conviction to thirty years at hard labor, with twenty-five years to be served without the benefit of probation, parole, or suspension of sentence. Thereafter, on April 21, 2014, Defendant filed a Motion for Appeal and Designation of Record, which was granted on that same date. On April 21, 2014, Defendant also filed a Motion to Reconsider Sentence, which was denied without a hearing.

Defendant is now before the court, alleging six assignments of error.

---

[1] In accordance with La.R.S. 46:1844(W)(3), the victims' initials are used to protect their identities.

## FACTS

Defendant was accused of committing oral sexual battery and sexual battery against the two sons of his girlfriend between the dates of June 1, 2012, and August 10, 2012. One of the victims, D.B., was age thirteen at the time the offense was allegedly committed, and the other victim, K.B., was age eight when the offense was allegedly committed.[2] Defendant was found not guilty of the oral sexual battery of D.B. and guilty of the sexual battery of K.B.

## ASSIGNMENT OF ERROR NUMBER FIVE

In this assignment of error, Defendant alleges that the evidence was insufficient to convict him of sexual battery of K.B. We will address this assignment of error first since a finding of merit to the error alleged in the assignment would preclude the necessity of considering the remaining assignments of error. *See State v. Hearold*, 603 So.2d 731 (La.1992).

As noted by appellate counsel, Defendant was acquitted of oral sexual battery of D.B.; thus, this assignment of error is limited to the sexual battery of K.B. However, we will discuss the evidence pertaining to the offense against D.B. since it was evidence considered by the jury and is relevant to the offense against K.B. Appellate counsel argues that the evidence was insufficient because there were inconsistencies throughout K.B.'s pre-trial statements and trial testimony. The State, on the other hand, argues that the inconsistencies are understandable considering K.B.'s young age and the trauma of the sexual battery. Because the jury found K.B.'s testimony credible, the State asserts that the evidence was sufficient to convict Defendant of the sexual battery of K.B.

---

[2]The bill of information indicates that D.B.'s date of birth was April 5, 1999. Although the bill of information asserts that K.B.'s date of birth was May 27, 2003, K.B. stated in one of his interviews that his date of birth was August 27, 2003.

*Standard of Review*

This court has stated the following regarding the standard for reviewing a claim of insufficient evidence:

> The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger,* 05–11, p. 91 (La.7/10/06), 936 So.2d 108, 170, *cert. denied,* 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville,* 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford,* 05–477, p. 6 (La.2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson,* 96–1048 (La.10/4/96), 680 So.2d 1165; *State v. Lubrano,* 563 So.2d 847, 850 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith,* 94–3116 (La.10/16/95), 661 So.2d 442.
>
> The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan,* 07–504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than ensuring the sufficiency evaluation standard of *Jackson,* "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert,* 97–64, pp. 4–5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726–27). Our supreme court has stated:
>
> > However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve " 'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.' " *McDaniel v. Brown,* 558 U.S. [120], [134], 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99

3

> S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

> *State v. Strother,* 09–2357, pp. 10–11 (La.10/22/10), 49 So.3d 372, 378 (alteration in original).

*State v. Francis*, 12-1221, pp. 6-7 (La.App. 3 Cir. 4/3/13), 111 So.3d 529, 533, *writ denied*, 13-1253 (La. 11/8/13), 125 So.3d 449.

<u>*Evidence Introduced at Trial*</u>

Jasper Doucet testified that he was a police officer with the Jennings Police Department in August of 2012. On August 10, 2012, Officer Doucet was dispatched to 126 Allen Street in response to a call by a juvenile. The juvenile, D.B., told Officer Doucet that Defendant touched his penis and had also touched D.B.'s younger brother, K.B. When Officer Doucet talked with K.B., he noticed that K.B. kept looking over his shoulder and seemed anxious. Officer Doucet told K.B. that D.B. said Defendant touched the two of them. When Officer Doucet asked K.B. if he had been touched by Defendant, K.B. told Officer Doucet that Defendant made K.B. touch Defendant's penis.

Albert Daniel Semmes, the deputy chief of the Jennings Police Department, testified that on August 10, 2012, he was advised of a possible child molestation. Officer Semmes contacted State of Louisiana, Office of Child Services (OCS), and caseworker Shamira Lyons responded to assist him. Officer Semmes was advised that D.B., a thirteen year old, reported to 911 that he and his brother, K.B., had been the victims of molestation. The suspect, Officer Semmes testified, was the boyfriend of D.B.'s mother, H.S. Officer Semmes was told by another officer that

4

Defendant engaged in masturbation with D.B. while in the bedroom with the lights turned off and that Defendant performed oral sex on D.B.

Officer Semmes talked to H.S., who confirmed that she walked in while Defendant and D.B. were in the bedroom with the lights turned off but claimed that the two were seated across the room from each other. When H.S. turned the lights on and asked Defendant what was going on, Defendant told her that D.B. asked him about masturbation and Defendant was explaining masturbation to D.B. H.S. also told Officer Semmes that D.B. was a problem child who lied and set fires. Although she had been informed by the boys about the sexual abuse allegations, H.S. did not believe them.

When Officer Semmes questioned Defendant, Defendant stated that D.B. was making the allegations up because he was mad at his mom and because D.B. had problems. Defendant admitted being in a room with D.B. with the lights turned off but stated that D.B. was asking him about masturbation. Officer Semmes further testified that Defendant admitted that H.S. asked him why D.B.'s pants were down, but Defendant had no explanation. Later, on cross-examination, Officer Semmes acknowledged that during Defendant's interview, Defendant stated that he did not know D.B.'s pants were down until he was confronted by H.S. outside. Defendant, however, had no explanation for the lights being off.

On cross-examination, defense counsel asked Officer Semmes about an interview of A.B., the sister of D.B. and K.B. According to Officer Semmes, A.B. said she did not think Defendant did anything wrong or inappropriate to her brothers. A.B. further stated that she believed D.B. called 911 because he was mad at his mother for not allowing him to use the weed eater.

5

The next witness to testify for the state was David Duplechain, the vice president for advocacy at the Family and Youth Counseling Agency. As part of his duties, Mr. Duplechain performs forensic interviews of children. Mr. Duplechain's office was contacted by the Jefferson Davis Parish Department of Children and Family Services in August of 2012 to conduct an interview of D.B. and K.B. Mr. Duplechain first discussed his interview with D.B. The interview itself was played for the jury.[3] Mr. Duplechain noted that D.B. gave lots of detail about the abuse, a factor that Mr. Duplechain believed indicated that D.B. was telling the truth. The interview of K.B. was also published to the jury. Mr. Duplechain was also impressed with the details of the abuse described by K.B. Additionally, Mr. Duplechain was impressed with the fact that K.B. answered "I don't know" to some of the questions and the fact that K.B. corrected Mr. Duplechain when he stated something that was not accurate. Finally, Mr. Duplechain testified that neither D.B. nor K.B. talked about being sexually abused by anyone other than Defendant.

After Mr. Duplechain's testimony, the state moved to publish S-5, a bill of information dated January 29, 2001, charging Defendant with indecent behavior with a juvenile, age eight, as well as a minute entry showing Defendant entered a plea of guilty to the charge. The exhibit was published to the jury.

The next witness to testify for the state was D.B., the victim of the count for which the jury found Defendant not guilty. D.B. testified that he was fourteen years old and born on April 5, 1999. D.B. identified Defendant as his mom's

---

[3]Although appellate counsel requested that the appellate record be supplemented with the interview of K.B., appellate counsel did not request the record be supplemented with the interview of D.B. since the jury found Defendant not guilty of the sexual misconduct involving D.B.

boyfriend in January or February 2012. D.B. remembered talking with David Duplechain and stated that what he told Mr. Duplechain was the truth. On cross-examination, D.B. testified that he called 911 in August of 2012 because Defendant had been molesting him and his little brother. D.B. testified that he told his mom about the abuse two or three weeks prior to calling 911. When asked what Defendant did to him, D.B. testified that Defendant had oral sex with him and had attempted anal sex.

K.B., the victim of the count for which the jury convicted Defendant (sexual battery), testified that he was ten years old and knew the difference between a truth and a lie. K.B. testified that everything he told Mr. Duplechain was the truth. On cross-examination, K.B. thought he remembered that on the day D.B. called 911, D.B. became angry with his mom for not letting him use a weed eater. K.B. also remembered telling D.B. and his mom what Defendant was doing to him (K.B.). When asked if he remembered telling Mr. Duplechain that Defendant asked him (K.B.) to rub his private, K.B. replied, "Yes, sir." K.B. said this happened twice. K.B. stated that one time it happened in the bedroom, and the other time it happened in the pool. According to K.B., the bedroom incident occurred in his mom's bedroom while he was watching a movie with Defendant. When asked how it stopped, K.B. stated that Defendant told him to stop. K.B. testified that afterward, he went to eat supper – macaroni and cheese and hot dogs. K.B.'s grandmother called him to supper because K.B.'s mom was still at work. Defendant, K.B., A.B., D.B., and K.B.'s other brother all ate together. K.B. testified that the pool incident happened after the bedroom incident, and he further testified that he talked to D.B. about each incident after it occurred.

Regarding the pool incident, K.B. first testified that he, his brothers, and Defendant were in the pool, but then testified that his brothers were just getting out of the pool. Although K.B. stated that he did not want to talk about it when defense counsel first asked him what happened in the pool, K.B. replied "[y]es, sir" when defense counsel asked him if Defendant asked K.B. to touch him. According to K.B., he saw Defendant's private area during both the bedroom incident and the pool incident. K.B. also testified that during both incidents, Defendant asked K.B. if he could touch K.B., but K.B. told Defendant that he could not touch him. When asked if he remembered what hand he used to touch Defendant, K.B. replied, "[m]y right[.]"

H.S., the mother of the victims, invoked a blanket Fifth Amendment privilege instead of testifying. Shamira Lyons, an investigator for the Department of Children and Family Services, testified that she investigated the charges of abuse and neglect of D.B. and K.B. in August, 2012. As a result of her investigation, Ms. Lyons' department filed an affidavit to have the custody of all four children changed from H.S. to the fathers of the children. On cross-examination, Ms. Lyons acknowledged that there were some inconsistencies between her interview of the victims and another interview that took place several days later. On redirect, however, Ms. Lyons testified that there were more consistencies between the two interviews than inconsistencies.

At the time of the interview, K.B. was age eight. When asked why he was brought to the interview, K.B. stated that it was because Defendant told him to rub Defendant's private. K.B. stated that this happened months before while he was at his mom's house and while his mom was at Walmart. Later, K.B. stated that the house was actually his granny's house. K.B. told Mr. Duplechain that the incident

8

happened in his mom's bed at nighttime. K.B. stated that he was playing on the computer until his time ran out and then he went to watch a movie with Defendant. After Defendant asked K.B. to rub his private, Defendant pulled down his shorts and underwear. K.B. rubbed Defendant's private with his right hand and stopped rubbing because it felt weird. K.B. said that Defendant put his own hand over K.B.'s and left it there the whole time. According to K.B., the lights were off, and he could not see Defendant's private. K.B. told Mr. Duplechain that he washed his hands afterward because of germs but did not have anything on his hand. K.B. then stated that he went to see what A.B. was doing on the computer. When asked by Mr. Duplechain if anything happened in the pool, K.B. said that nothing ever happened in the pool.

*Defendant's Witnesses*

Shamira Lyons, the investigator for the Department of Children and Family Services, was called as a witness for the defense. During Ms. Lyons' testimony, the interviews she conducted with D.B. and K.B. were published to the jury. According to Ms. Lyons, the interviews were conducted on August 10, 2012.

During D.B.'s interview, D.B. told Ms. Lyons that K.B. told him that Defendant had taken K.B.'s hand and put it on Defendant's penis. According to D.B., K.B. also said that Defendant asked K.B. to suck his penis while they were in the pool.

During K.B.'s interview with Ms. Lyons, K.B. stated that he was eight years old and knew that he was being interviewed because of what his stepfather did. K.B. stated that he called his stepfather "Daddy Jared[,]" and said that his stepfather was not actually married to his mom. K.B. further stated that his stepfather told him (K.B.) to rub his stepfather's private area a few months before.

K.B. and his stepfather were watching a movie while K.B.'s mom went to Walmart. According to K.B., his grandma was at work at the Rocket. During the interview, K.B. demonstrated the hand motion he used to rub his stepfather's private up and down. K.B. demonstrated with his left hand and said that he told his stepfather to stop. K.B. testified that his stepfather kept his hand on K.B.'s hand, that K.B. saw hair on his stepfather's private, and that K.B. washed his hand afterward. As for the pool incident, K.B. told Ms. Lyons that his stepfather pulled his swimming trunks down and pointed down. K.B. went under water and saw Defendant's private. Besides telling his mom a few weeks earlier, K.B. stated that he told no one what Defendant did to him.

K.B.'s sister, A.B., testified for Defendant. At the time of trial, A.B. was twelve years old. A.B. testified that on the day D.B. called 911, he was very mad. A.B. also testified that at that time, D.B. told a lot of lies and would blame K.B. According to A.B., K.B. would take up for D.B. When asked if she ever saw anything inappropriate happen between K.B. and Defendant, A.B. replied, "No."

The last witness to testify for the defense was Defendant. Defendant testified regarding his prior conviction for indecent behavior with a juvenile. Defendant testified that the incident happened when he was about eighteen years old and involved an eight-year-old girl. According to Defendant, he caught the girl before she fell off of a riding lawnmower and was then accused of touching the girl's breasts. Although Defendant claimed the touching was an accident, he entered a plea to the offense because it was getting to where he could not afford to miss work. Because the plea was for a suspended sentence and probation, Defendant decided to take the plea. Defendant denied all of the allegations made against him but admitted to being in the bedroom with D.B. discussing

10

masturbation. On cross-examination, Defendant admitted that in addition to his previous conviction for indecent behavior with a juvenile, he had another previous conviction for simple burglary.

*Defendant's Argument*:

As noted by appellate counsel in her brief, Defendant was found not guilty of oral sexual battery of D.B. and guilty of the sexual battery of K.B. Thus, Defendant is challenging the sufficiency of the evidence only as to the sexual battery of K.B.

Sexual battery is defined as:

the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur:

. . . .

(2) The act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender.

La.R.S. 14:43.1.

Rather than arguing that the State failed to prove a specific element of sexual battery, appellate counsel argues that K.B.'s different pre-trial statements and his testimony at trial contained inconsistencies. At trial, K.B. testified that when the bedroom incident occurred, his mom was working at the Rocket, and his grandmother was watching television in the living room. In K.B.'s pre-trial interviews, however, he stated that his mom was at Walmart when the bedroom incident occurred. During his pre-trial interview with Ms. Lyons, K.B. stated that his grandmother was working. K.B.'s pre-trial interviews and trial testimony also contained inconsistencies about what he and Defendant were wearing during the

11

bedroom incident. At trial, K.B. testified that he and Defendant were both wearing blue jeans. During K.B.'s pre-trial interviews, K.B. stated that Defendant was wearing "camo" shorts. During his trial testimony, K.B. testified that when the bedroom incident was over, he went to eat supper. During his interview with Mr. Duplechain, however, K.B. stated that when the bedroom incident was over, he went to see what A.B. was doing on the computer. Also, during K.B.'s interview with Mr. Duplechain and at trial, he stated that he used his right hand to rub Defendant's private, but during the interview with Ms. Lyons, K.B. used his left hand to demonstrate how he rubbed Defendant's private. At trial, K.B. testified that he saw Defendant's private during the pool incident. During his interview with Mr. Duplechain, however, K.B. stated that nothing ever happened in the pool, and during his interview with Ms. Lyons, K.B. stated that he saw his stepfather's private when his stepfather pulled down his swimming trunks. Finally, during K.B.'s interview with Mr. Duplechain, K.B. stated that he could not see Defendant's private during the bedroom incident. At trial, however, K.B. testified that he saw Defendant's private during the bedroom incident.

Appellate counsel asserts that considering these inconsistencies in K.B.'s testimony along with A.B.'s testimony that K.B. would take up for D.B. when D.B. was untruthful, the State's evidence was insufficient to prove beyond a reasonable doubt that Defendant committed a sexual battery upon K.B. The State, on the other hand, asserts that the inconsistencies are understandable considering K.B.'s age and the trauma of the events. Additionally, the State argues that the inconsistencies do not relate to the elements of the crime. The swimming pool incident, the State asserts, was not the offense for which Defendant was charged. Finally, the State asserts that the jury found K.B.'s testimony to be credible.

*Jurisprudence and Analysis*

As this court has stated:

> It is well-settled that a victim's testimony alone is sufficient to support a verdict as long as that testimony was believed by the trier of fact and that testimony does not contain internal contradictions or irreconcilable conflicts with physical evidence:
>
>> A victim's or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. *State v. Davis*, 02-1043, p. 3 (La. 6/27/03); 848 So.2d 557, 559. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04); 874 So.2d 66, 79.
>
> *State v. Dorsey*, 10-216, pp. 43-44 (La. 9/7/11), 74 So.3d 603, 634, *cert. denied*, — U.S. —, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012).

*State v. Bergeron*, 14-608, p. 16 (La.App. 3 Cir. 11/5/14), 150 So.3d 523, 534.

The jury in the present case heard K.B.'s pre-trial interviews as well as his trial testimony. Thus, the jury was able to evaluate K.B.'s testimony considering the inconsistencies and obviously chose to believe K.B.'s allegations. As noted by the State, none of the inconsistencies involved the elements of the offense. This court will not upset the jury's credibility determination.

For the foregoing reasons, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER ONE

In this assignment of error, Defendant challenges the trial court's denial of his right to subpoena and question a juror about her omission of relevant information during voir dire, the denial of his right to subpoena and question other jurors concerning the improprieties of the juror during deliberations, and the denial of Defendant's motion for new trial based on these allegations.

On February 10, 2014, Defendant filed a motion for new trial asserting several reasons in support of a new trial. The only reason raised on appeal is the following:

(3)  The defendant has discovered, since the verdict, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by Defendant, was not discovered before the verdict; specifically, Defendant has discovered that Juror No. 46 failed to disclose during *voir dire* that she had previously been the victim of a sexual assault. During deliberations, Juror No. 46 disclosed to the deliberating jury that she had previously been the victim of a sexual assault and broke down emotionally during deliberations. The extent of her emotional reaction caused several other jurors to recommend that Juror No. 46 excuse herself from deliberation. However, Juror No. 46 refused and/or failed to excuse herself and continued to deliberate, to the detriment and prejudice to the defendant. Additionally, had Juror No. 46 disclosed during *voir dire* that she had previously been the victim of a sexual assault, the defendant would not have allowed said juror to remain on the jury. Defendant asserts that, had Juror No. 46 disclosed this matter, he would have requested to challenge the juror for cause. In the alternative, defendant still had peremptory challenges remaining at the time that Juror No. 46 was seated and would have exercised a peremptory challenge in order to excuse Juror No. 46 from the jury. This omission of being a previous victim of sexual assault and the resulting issues that it caused during the jury's deliberation were prejudicial to the defendant and resulted in the denial of a fair trial to the defendant and resulted in the denial of the defendant's right to be tried by an impartial jury.

Defendant issued subpoenas for four of the jurors to appear at the hearing on the motion for new trial. The state orally moved to quash the subpoenas and filed a memorandum in support of its motion to quash, citing La.Code Evid. art. 606 (Jury Shield Law). Louisiana Code of Evidence Article 606 provides, in pertinent part:

**B. Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial

14

information was improperly brought to the jury's attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Defendant filed a reply memorandum, asserting that the emotional breakdown of Juror No. 46 was an outside influence that tainted the jury's deliberations and, thus, was not protected by the "jury shield law." Defendant further alleged that the information sought by the subpoena of Juror No. 46 was not a statement or matter that occurred during the course of the jury's deliberations. Rather, Defendant asserted that the information to be subpoenaed involved Juror No. 46's omission of certain information during voir dire.

At a hearing held on March 31, 2014, the trial court granted the state's motion to quash the subpoenas, reasoning as follows:

> After reviewing the arguments of counsel and the memoranda offered by the parties, the Court will grant the State's oral motion to quash the subpoenas issued for the four jurors. The defendant has not argued that the juror in question, No. 46, was dishonest about any potential issues she might have with the case or the charges involved. In fact, she stated that she could - - she believed she could be a fair and impartial juror, and there has been no evidence to suggest that there was - - that she was being deceptive.

> Furthermore, the Court finds that there is no evidence of any outside influence that affected the jury's deliberation. Therefore, the "Jury Shield Law" of Code of Evidence Article 606 applies, and the jurors are disqualified as witnesses. As a result, the motion to quash on behalf of the State of Louisiana is hereby granted.

Subsequently, at a hearing on April 14, 2014, defense counsel stated that since the trial court granted the motion to quash the subpoenas, he had no further information to provide to the court in support of the motion for new trial. Based on the information before it, the trial court denied the motion for new trial.

In brief, appellate counsel argues that the trial court's denial of the motion for new trial was improper since defense counsel was denied the opportunity to

15

present the merits of the motion by the trial judge's grant of the state's motion to quash the subpoenas. Because the trial court quashed Defendant's subpoenas of four jurors, appellate counsel argues that Defendant was denied the opportunity to question Juror No. 46, in particular, "concerning her omission during voir dire to establish first that there was misinformation provided during voir dire and then to question this juror and possibly other jurors to establish the effect it had on the guilty verdict rendered in this case."

*Inability to Subpoena Juror No. 46:*

Appellate counsel asserts that during voir dire, Juror No. 46 did not disclose that she was the victim of a sex offense when the trial judge asked the panel if anyone of them had been the victim of a crime. Appellate counsel argues that Juror No. 46's failure to disclose that she was the victim of a sex offense was tantamount to a false statement. Appellate counsel asserts that a motion for new trial is the proper method to raise error as to the post-verdict discovery of false statements made by jurors during voir dire, citing *State v. Cooley*, 11-959 (La.App. 3 Cir. 4/4/12), 87 So.3d 285, *writ denied*, 12-1008 (La. 10/26/12), 99 So.3d 640. However, as appellate counsel recognizes, a defendant must show that he was prejudiced by the misstatement in order for a new trial to be warranted. *Id.* (quoting *State v. Johnson*, 32,910, p. 5 (La.App. 2 Cir. 1/26/00), 750 So.2d 398, 403-04, *writ denied*, 00-911 (La. 11/3/00), 773 So.2d 140). Additionally, the following standard must be adhered to when an appellate court reviews a motion for new trial:

> The denial of a motion for a new trial is not subject to appellate or supervisory review except for error of law. La.Code Crim.P. art. 858. The decision on a motion for new trial rests within the sound discretion of the trial judge. We will not disturb this ruling on appeal absent a clear showing of abuse. The merits of such a motion must be

16

viewed with extreme caution in the interest of preserving the finality of judgments. Generally, a motion for new trial will be denied unless injustice has been done. *See* La.Code Crim.P. art. 851; *State v. Home*, 28,327 (La.App.2d Cir. 8/21/96), 679 So.2d 953, 956, *writ denied*, 96-2345 (La. 2/21/97), 688 So.2d 521.

*State v. Austin*. 11-2150, p. 7 (La.App. 1 Cir. 6/8/12) (unpublished opinion), *writ denied*, 12-1595 (La. 2/8/13), 108 So.3d 77.

In this case, Juror No. 46 answered a juror questionnaire prior to jury selection. The questionnaire asked the juror the following question, "Have you, or anyone in your immediate family, ever been the victim of a crime?" Juror No. 46 answered that both she and a family member had been the victim of a crime, and the juror described the crime as follows: "Two home burglaries within 6 months of each other in my family's home as a child." During the trial court's voir dire of Juror No. 46's group, the trial court asked if any of the jurors or anyone close to them had been the victim of a crime. Although Juror No. 46 did not respond, another juror stated that there had been "some sex crimes in the family." When asked if that would affect the juror's judgment, the juror said that he thought it would. Juror No. 46 did not respond to any of the questions asked until the state asked if anyone felt like they were an expert on reasonable doubt. Juror No. 46 apparently raised her hand, and the following colloquy ensued:

MS. NAQUIN:

Juror No. 46, you said that your husband was a law enforcement officer, right?

JUROR NO. 46

Yes.
MS. NAQUIN:

And so you feel like you have a good understanding.

What is your understanding?

17

JUROR NO. 46

If there's any question in my mind, if it's not 100 percent clear, then you can't put forth a guilty verdict.

MS. NAQUIN:

Okay. So you would want it to be 100 percent, right?

JUROR NO. 46:

No doubt in my mind.

MS. NAQUIN:

No doubt - -

JUROR NO. 46:

No questions.

MS. NAQUIN:

Does that mean no possible doubt?

JUROR NO. 46:

Nothing that you can't explain.

MS. NAQUIN:

So if there's a doubt that you have a reason for - -

JUROR NO. 46:

Correct, justification behind your doubt, then, yes, that's a different - -

MS. NAQUIN:

That would be something that you would be able to articulate or discuss, right?

JUROR NO. 46:

Correct.

Later, Juror No. 46 was asked if her ability to evaluate the credibility of the Jennings Police Department officers called as witnesses would be affected by the fact that her husband worked with some of them. Juror No. 46 stated that her ability to judge their credibility would not be affected. Sometime thereafter, the following colloquy took place between defense counsel and Juror No. 46:

MR. OUSTALET:

I'm going to come to you because you have - - you have experiences that other people in the courtroom don't. You've been married to a police officer, and you have triplets, so you know how to deal with kids. The fact that you have kids at home, is that going to affect your ability to listen to other children testify?

JUROR NO. 46:

No.

MR. OUSTALET:

Can you listen to testimony of anybody, whether it's a law enforcement officer, like your husband used to do, whether it's children, like you have at home, can you evaluate the testimony for what it is as it's presented on the stand?

JUROR NO. 46:

Yes.

MR. OUSTALET:

Without thinking that could be my kids, so I'm going to convict somebody just in case?

JUROR NO. 46

No.

Juror No. 46 was accepted by both the state and the Defense. As the trial court found when it granted the state's motion to quash Defendant's subpoena of Juror No. 46, it is clear from her answers above that Juror No. 46 believed she could be

fair and impartial. Defendant's complaint, however, is not with the answers Juror No. 46 did give, it is with the answers Juror No. 46 did not give.

Appellate counsel claims that Juror No. 46's failure to disclose that she was the victim of a sexual assault during voir dire deprived Defendant of the opportunity to challenge her for cause or to exercise one of his peremptory challenges. Appellate counsel further argues that questioning Juror No. 46 about her failure to reveal such information during voir dire is not prohibited by the "jury shield law." As long as such questions did not involve the jury's deliberations and involved only Juror No. 46's failure to truthfully answer questions during voir dire, we agree with appellate counsel that the "jury shield law" does not prohibit such questioning. In *Rains v. Diamond M. Co.*, 396 So.2d 306, 315 (La.App. 3 Cir.), *writ denied*, 399 So.2d 623 (La.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427 (1982), this court agreed "that a distinction exists between impeaching the jury verdict and attempting to ascertain whether the jurors responded truthfully on voir dire." In that regard, this court stated, "we feel the trial judge should have admitted the testimony which may have indicated incomplete responses on voir dire." *Id.* A review of the record as a whole, however, convinced the court in *Rains* that information withheld during voir dire did not preclude the defendants from obtaining a fair and impartial trial and that the jurors based their verdict solely on the evidence presented at trial rather than extrinsic matters. *Id.*

Although the "jury shield law" did not prohibit Defendant from questioning Juror No. 46 as to whether she was truthful during voir dire, the first question that must be answered is whether, based on the record before this court and the allegations made by Defendant, Juror No. 46's silence to certain questions by the trial court should be considered as giving a false statement. In his motion for new

20

trial, Defendant alleged that during the deliberations, Juror No. 46 disclosed to the deliberating jury that she had previously been the victim of a sexual assault. However, during voir dire, Juror No. 46 did not respond when the trial court asked if she or anyone in her immediate family had been the victim of a crime. This court finds that the trial court's use of the words "victim of a *crime*" rather than "victim of a *sexual offense*" did not put Juror No. 46 on notice that she was required to disclose a sexual assault. It is possible that Juror No. 46 would not have equated a prior sexual assault with being the victim of a crime. The better choice of words would have been whether the juror had been the victim of sexual abuse. In *Cooley*, 87 So.3d at 289 (emphasis added), the juror questionnaire "asked whether the juror, the juror's family member, or the juror's close acquaintance had been a victim of *sexual abuse*."

In *Austin*, 11-2150, p. 7, the first circuit addressed a similar fact scenario as follows:

> We note initially that this statement – "Have any of you, or a close friend, or a relative been the victim of a crime? If you have, please just raise your hand" – attributed to the trial court by the defendant is incorrect. What the trial court actually asked the panel was the following: "Have any of you, or a close friend, or a relative been the victim in *a criminal case?* Have *you* been the victim of a crime? If you have, please just raise your hand." (Our emphasis). The trial court did not ask, as the defendant would suggest, if a close friend had been the victim of a crime. It asked if "you," the individual prospective juror, had been the victim of a crime. The trial court asked if a close friend had been the victim in a criminal case, which, arguably, suggests the victim (or relatives of the victim) had been involved in a trial. If Karpinski had not personally been the victim of a crime, and if she knew two people who were murdered, but knew nothing of a "criminal case" involving those murdered, then there was no misconduct whatsoever on the part of Karpinski.

*See also State v. Short*, 94-233 (La.App. 4 Cir. 5/16/95), 655 So.2d 790, *writ denied*, 95-1520 (La. 11/17/95), 663 So.2d 719, where the court found that the

juror in question was never asked during voir dire if she was the victim of any type of *sexual abuse*; thus, she was never given the opportunity to reveal such abuse.

Likewise, Juror No. 46 may not have equated her alleged prior sexual assault with being the victim of a crime. In such case, Juror No. 46's failure to disclose the prior sexual assault when the trial judge asked if anyone had been the victim of a crime would not have equated to a false statement. We find that there was no juror misconduct during voir dire; thus, the trial court did not err in quashing Defendant's subpoena of Juror No. 46 and denying the motion for new trial as far as it alleged misconduct on the part of Juror No. 46 during voir dire.

*Harmless Error*

We find that any error that occurred because of Juror No. 46's failure to disclose a prior sexual assault during voir dire was harmless. The jury's vote as to count one, oral sexual battery, was not guilty, and the jury's vote as to count two, sexual battery, was guilty by a unanimous vote. Considering the jury's not guilty vote as to count one, Defendant was obviously not prejudiced as to that count. As to count two, the jury's verdict was unanimous even though a vote of only ten out of twelve was required. See La.Code Crim.P. art. 782(A). In *State v. Johnson*, 32,910 (La.App. 2 Cir. 1/26/00), 750 So.2d 398, *writ denied*, 00-911 (La. 11/3/00), 773 So.2d 140, the second circuit found that because Johnson was convicted by a unanimous jury when only ten out of twelve votes were required, Johnson could not show that he was prejudiced by the jurors' alleged false statements during *voir dire*. In the instant matter, we find that Defendant has failed to show that he was prejudiced by failure of Juror No. 46 to relate her experiences to the trial court.

22

In *State v. Ingram*, 10-2274, pp. 6-8 (La. 3/25/11), 57 So.3d 299, 302-03 (citations omitted)(alterations in original), the supreme court discussed the jury shield law as follows:

> As a general rule, "[j]urors are not expected to come into the jury box and leave behind all that their human experience has taught them." Individual jurors "bring to their deliberations qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable." For the most part, how jurors may draw on their experience in the deliberative process remains shielded from view and therefore largely unknowable. Louisiana subscribes to the common law rule, incorporated in La.C.E. art. 606(B), that jurors may not impeach their verdict by evidence of their own misconduct. The rule incorporates important systemic values, including the finality of judgments, and allows only the narrow exceptions for outside influences or extraneous prejudicial information. . . . As the trial court in the present case was keenly aware, jurors generally remain free to share what their experience and knowledge has taught them, even in situations similar to the circumstances of the crime for which they are empaneled, without calling into question the validity of their verdict. *See, e.g., State v. Sanders*, 33,778, pp. 4-5 (La.App.2d Cir. 10/4/00), 769 So.2d 183, 187 (in trial for a drive-by shooting in which the victim lost his spleen, jury foreman remained free to discuss his personal experience as the victim of a drive-by shooting and conveyed information gleaned from his wife, a nurse, about the difficulties of living without a spleen).
>
> However, in exceptional cases, jurors themselves may be the source of extraneous prejudicial outside information as well as third parties. *See, e.g., Jeffries v. Wood*, 114 F.3d 1484, 1490 (9th Cir. 1997) ("When a juror communicates objective extrinsic facts regarding the defendant or the alleged crimes to the jurors, the juror becomes an unsworn witness within the meaning of the Confrontation Clause. . . . That the unsworn testimony comes from a juror rather than a court official does not diminish the scope of a defendant's rights under the Sixth Amendment."); *United States v. Swinton*, 75 F.3d 374, 381 (8th Cir. 1996)("[T]he inquiry is not whether the jurors 'became witnesses' in the sense that they discussed *any* matters not of record but whether they discussed specific extra-record *facts* relating to the defendant, and if they did, whether there was a significant possibility that the defendant was prejudiced thereby.") (internal quotation marks and citation omitted).

In *Austin*, 11-2150, the first circuit faced a factually similar case wherein the jury foreperson allegedly failed to disclose that he had close relationships with two

23

people that were murdered. Like the Defendant in the present case, Austin sought to have the jury foreperson and another juror testify at a motion for new trial hearing as to what they discussed in the jury room. Austin's defense counsel argued that if the foreperson mentioned during deliberations that he was good friends with two people that were murdered, there would be grounds for a new trial. The trial court in *Austin* denied the motion for new trial without allowing the jurors to testify. Affirming the trial court's decision, the first circuit, citing the jury shield law, found that it would have been improper for the two jurors to testify. The first circuit first found that Austin failed to meet the requirement of specificity in alleging juror misconduct. Further, the first circuit found that Austin failed to allege that the jury was prejudiced by any "outside influences" or "extraneous prejudicial information[:]"

> There has been nothing alleged to suggest that the jury based its verdict on prohibited factors, such as coercion by a party or inadmissible evidence of other crimes obtained from an out-of-court source. Moreover, communications among jurors, even when violative of the trial court's instructions, do not amount to "outside influences" or "extraneous prejudicial information" [*State v.*] *Emanuel-Dunn*, [03-550 (La.App. 1 Cir. 11/7/03),] 868 So.2d [75,] at 82[*writ denied*, 04-339 (La. 6/25/04), 876 So.2d 829]. Because any intra-jury communications that may have taken place were not improper outside influences or extraneous prejudicial information, we find that the trial court properly denied the defendant's motion for new trial. *See* [*State v.*] *Horne*, [28,327 (La.App. 2 Cir. 8/21/96),] 679 So.2d [953,] at 958[, *writ denied*, 96-3245 (La. 2/21/97), 688 So.2d 521].

*Id.* at p. 8.

Likewise, the improper communications alleged by Defendant in the present case were not improper outside influences or extraneous prejudicial information. Rather, the alleged communication involved Juror No. 46's own human

24

experience. Thus, we find the trial court correctly quashed Defendant's subpoena of the jurors as to their deliberations.

## ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, Defendant alleges that the trial court erred in allowing H.S., the mother of the victims, to assert a blanket Fifth Amendment privilege. During the state's case, H.S. appeared before the court represented by counsel. When the trial court asked H.S. if she was invoking the Fifth Amendment, H.S. replied, "Yes, sir." The trial court then stated the following:

THE COURT:

All right. A blanket Fifth Amendment privilege is permissible when the witness is charged with participating in the same crime in which the defendant is being tried, and when it is apparent that the inquiry will be devoted to subject matter that would raise in the witness reasonable cause to apprehend danger from a direct answer or an explanation as to why one cannot be given.

Based on that, the Court is going to allow H.S. to give a blanket Fifth Amendment privilege in this matter.

Now, further, since the Court knows and all parties know in this matter that H.S. is going to be invoking a blanket Fifth Amendment, the Court is going to state for the record neither party will be allowed to call her as a witness, all right.

The trial court then asked the parties if there were any objections, and defense counsel stated that he had several:

MR. OUSTALET:

Your Honor, first of all, I want to make an objection to the Court's ruling allowing H.S. to enter a blanket Fifth Amendment privilege. The Louisiana Supreme Court has determined that in balancing the Fifth Amendment privilege against self-incrimination versus the defendant's Sixth Amendment right to present a defense that the witness may do so only in response to questions where the defendant has reasonable cause to apprehend danger from a direct answer. As the Court just quoted from <u>State v. Grant</u>, a blanket Fifth Amendment privilege is permissible, and it goes on to say when it is apparent that the inquiry will be devoted to subject matter that would

raise in the witness reasonable cause to apprehend danger from a direct answer.

As we've discussed with the Court in chambers, the defense is requesting to call H.S. and ask her one question: What is [D.B.]'s reputation - - reputation for truthfulness in the community? It's our contention that that statement is not in any way incriminating for her, and that that statement does not present to her a reasonable cause that her answer will place her in danger or be used in any way against her.

So for that reason, we are going to object to the Court's ruling that she be allowed to make a blanket Fifth Amendment privilege, and we are going to object to the Court not allowing her to be called as a witness for the defense with regard to that one question.

In its response, the State asserted that it had no objection to the Court's ruling:

MS. NAQUIN:

Your Honor, the State has no objection to the Court's ruling. Based on the reading of State versus Grant, the Court did not specifically rule that only the specific question and the specific answer could be incriminating. I believe that the factual basis for this case was such that there were multiple co-defendants that were involved in a home during a drug transaction and the State was wanting to introduce the co-defendants' testimony to allow the co-defendants to state that they were simply present at the home often. However, there had been testimony earlier that there was much drug transactions going on at the home, and so the State could have implied that the co-defendants were incriminating themselves because they were simply present at a home involved in drug trafficking transactions.

And so I think that this court case used a loose interpretation of what could possibly be used against them. I know that H.S. had a DCFS case that resulted from this incident, and H.S. also has the - - the charges that she's charged with that were a result of this same incident. The State is concerned that should she testify and answer any questions that it possibly could motivate the State to pursue charges against her more strongly, or also that it would hurt her ability to pursue any further DCFS proceedings.

Defense counsel responded by reiterating that the state had not shown that D.B.'s reputation for truthfulness in the community would reasonably cause H.S. to

apprehend danger. The trial court stood by its original finding that H.S. could plead a blanket Fifth Amendment privilege.

In *State v. Wilson*, 394 So.2d 254 (La.1981), the supreme court held that the trial court committed reversible error by refusing to order a witness to answer defense counsel's question and assert his privilege on a question by question basis. Subsequently, however, the supreme court found the assertion of a blanket Fifth Amendment privilege was appropriate in certain circumstances:

> In general, a blanket Fifth Amendment privilege is permissible when the witness is charged with participating in the same crime for which the defendant is being tried, and when it is apparent that the inquiry will be devoted to subject matter that would raise in the witness reasonable cause to apprehend danger from a direct answer or an explanation as to why one cannot be given. *State v. Brown*, 514 So.2d 99, 109-11 (La.1987) (citing *State v. Darby*, 403 So.2d 44, 48-49 (La.1981)); *State v. Edwards*, 419 So.2d 881, 892 (La.1982); *State v. Coleman*, 406 So.2d 563, 566 (La.1981); *but see State v. Wilson*, 394 So.2d 254, 257-59 (La.1981) (a privilege may be asserted only as to particular questions). The United States Supreme Court has observed that, "[t]o sustain the privilege [against self-incrimination,] it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer . . . or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. 479, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

*State v. Bright*, 98-398, pp. 39-40 (La. 4/11/00), 776 So.2d 1134, 1156 (alterations in original).

Further explaining the necessity of a question-by-question invocation of the privilege, the supreme court stated:

> *Darby*, *Edwards*, and *Coleman* all held that question by question invocation of the privilege was not necessary under circumstances in which the witness invoking the privilege was charged with participating in the same crime as the defendant on trial and in which it was apparent that the questioning would be devoted to subject matter which would require the defendant to invoke the privilege. . . . In other words, where a witness in this position has reasonable grounds to assert the privilege as to the entire area of expected questioning, we have not required the witness to take the

27

> stand and risk making an injurious disclosure through any answer or explanation of a refusal to answer.

*State v. Brown*, 514 So.2d 99, 110-11 (La.1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754 (1988) (citing *State v. Darby*, 403 So.2d 44 (La.1981), *cert. denied*, 454 U.S. 1152, 102 S.Ct. 1022 (1982); *State v. Edwards*, 419 So.2d 881 (La.1982); and *State v. Coleman*, 406 So.2d 563 (La.1981)). In *State v. P.T.,* 07-665, p. 5 (La.App. 3 Cir. 12/5/07), 970 So.2d 1255, 1259, (alteration in original) *writ denied*, 08-26 (La. 5/30/08), (alteration in original) 983 So.2d 895, this court recognized the general proposition that a witness' right not to incriminate himself outweighs a defendant's right to present a defense:

> Moreover, in *State v. Haddad,* 99-1272, p. 5 (La. 2/29/00), 767 So.2d 682, 686, *cert. denied*, 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001), the supreme court held that "[a]s a general proposition, when faced with resolving the tension between a witness' Fifth Amendment privilege against self-incrimination and a defendant's Sixth Amendment right to present a defense, this court has consistently recognized the witness's right not to incriminate himself."

We note that in several cases wherein the courts have decided that the assertion of a blanket Fifth Amendment privilege was proper, the questions sought by Defendant concerned the events surrounding the crime itself. In *Brown*, 514 So.2d 99, the supreme court found that a co-defendant was properly allowed to assert a blanket Fifth Amendment privilege when Brown sought to ask the co-defendant questions concerning the co-defendant's contacts with Brown on the day of the murder. In *Darby*, 403 So.2d 44, the supreme court upheld the assertion of a blanket privilege when the witness sought to be questioned was charged with his participation in the murder at issue, and the questions sought concerned the events of the day the murder was committed. In *Edwards*, 419 So.2d 881, the supreme court allowed the assertion of a blanket privilege by two co-defendants of whom

Edwards sought to ask questions concerning the night of the murders. Finally, in *Bright*, 776 So.2d 1134, the supreme court upheld a blanket assertion of the privilege by a co-defendant of whom Bright sought to ask questions concerning the co-defendant's acquaintance with Bright, the co-defendant's knowledge of Bright's whereabouts the night of the murder, and the co-defendant's contact with Bright on the day of the murder.

In brief, Defendant stresses that the mere fact that a witness is a co-defendant is not sufficient to invoke a blanket Fifth Amendment Privilege. The trial court must make an additional determination, appellate counsel asserts, as to whether the witness has a reasonable basis to believe that providing a direct answer to the question posed would result in harm to himself. According to appellate counsel, the questions defense counsel wanted to ask H.S. involved D.B.'s truthfulness, not issues directly involved with the alleged offense. Appellate counsel also asserts that Defendant's right to present a defense did not directly conflict with H.S.'s right against self-incrimination "as [the Defendant's] intended questioning did not go to the actual crime but concerned a witness's character."

The trial court in the present case did not make a specific finding that H.S. would be placed in reasonable apprehension of danger by questions concerning D.B.'s truthfulness. Rather, the trial court appeared to be persuaded by the fact that H.S. had charges pending against her based on the facts at issue and the fact that H.S.'s attorney advised her to plead the Fifth Amendment privilege. Nonetheless, the record does not support a finding that Defendant was prejudiced by H.S.'s blanket Fifth Amendment privilege. This court recognizes that there are several cases where a harmless error analysis has been applied to similar factual scenarios.

29

In *State v. Coleman*, 406 So.2d 563 (La.1981), the supreme court addressed the correctness of the trial court's allowance of two witnesses to invoke a blanket Fifth Amendment privilege. The supreme court concluded its analysis by stating that Coleman had failed to prove he was prejudiced by one of the witness' refusal to testify:

> Defendant has also failed to prove that he has been prejudiced by Miller's refusal to testify. There is no indication that any testimony by Miller would have helped defendant's case. Moreover, Miller's testimony at Edwards' trial was also read to the jury at defense counsel's request. It is undisputed that he merely acknowledged his presence at the residence where the offenses occurred and claimed ownership of the P.C.P. Once again, it appears that the only favorable statement made by Miller, namely, that he owned the drug, was put before the jury.

*Id.* at 567 (footnote omitted).

In *State v. Johnson*, 404 So.2d 239 (La.1981), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1970 (1982), the supreme court stated the following in its analysis of whether the trial court erred in allowing a witness to invoke her Fifth Amendment privilege outside of the presence of the jury:

However, none of the statements by this witness bore on a fundamental part of the State's case and they would not have bolstered the defense. Defendants were not denied testimony which which [sic] would have been relevant and material to their defense.

*Id.* at 246 (citation omitted).

In *State v. Larpenteur*, 93-1424, p. 6 (La.App. 4 Cir. 4/28/94), 636 So.2d 1103, 1107, the fourth circuit applied the following harmless error analysis to the trial court's allowance of a witness to invoke a blanket privilege:

> As in *Coleman*, even were the blanket privilege not proper in this case, the defendant was not prejudiced by the failure of the witness to testify. Warren Angelo's testimony at best would tend to

prove only that Angelo and Dominici were advised by the defendant that he had purchased salvage rights to the property, that they had been hired by the defendant to remove salvage from the property, and that they had been sent to evaluate the job when they were arrested. Angelo was never reputed to have first-hand knowledge of Jack Miller or to have seen any documents which purported to give the defendant salvage rights. Angelo's testimony would thus not have altered the outcome. Any error in permitting Angelo to invoke a blanket privilege would therefore be harmless error.

In *P.T.*, 970 So.2d 1255, this court engaged in a harmless error type analysis even though it did not expressly state it was doing so. Affirming the trial court's decision to allow the witness to invoke his Fifth Amendment privilege, this court stated the following:

> Given the circumstances, we find that the trial court did not err in permitting Reinholdt to invoke his Fifth Amendment privilege against self-incrimination. Although Reinholdt's testimony may have impeached T.S.'s testimony, thus raising the issue of her credibility, it does not offer any exculpatory testimony that would show that the defendant did not engage in sexual conduct with T.S. Moreover, the defendant did not allege that the scope of questioning would have gone beyond the issue of whether or not Reinholdt knew T.S.

*Id.* at 1259-60.

Applying a harmless error analysis to the present case, we find that even if the trial court erred in allowing H.S. to invoke a blanket privilege, the error was harmless. During Detective Semmes' testimony, he testified that H.S. told him that D.B. lied to her and set fires. H.S. also told Detective Semmes that D.B. was a problem child. Additionally, D.B.'s sister, A.B., testified that about the time the alleged sexual activity occurred, D.B. would tell a lot of lies and blame his siblings. When asked if D.B. would blame her, A.B. explained "Well, not on me, but, like, on [K.B.], and [K.B.] would take up for it. That's why we wouldn't really believe him." Thus, the questionable veracity of D.B. was brought before the jury, and the jury was able to consider this testimony when deciding whether or

31

not to believe the victims. Furthermore, the jury found Defendant not guilty of the charges involving D.B. Accordingly, any error the trial court committed in allowing H.S. to assert a blanket privilege was harmless.

For the foregoing reasons, this assignment lacks merit.

**ASSIGNMENT OF ERROR NUMBER THREE**

In this assignment of error, appellate counsel alleges that the trial court erred in allowing one of the detectives to testify as to what was told to him by others since the testimony was hearsay, the testimony's admission denied Defendant his right to confront his accusers, and the testimony was prejudicial. In explaining what statements Defendant alleges were erroneously admitted at trial, appellate counsel states the following:

> During the trial, the State questioned the detective assigned to this case about what he was told by H.S.. [sic] The detective was also questioned about what he had been told by the two boys. He responded that "They indicated also that oral sex did take place." (III, p. 656). Although a follow-up question indicated that the allegation was that Jared Pontiff had performed oral sex on D.B., later in his testimony when being questioned by the prosecutor about the allegations the boys made to H.S., the detective testified "[t]he allegations were that the - - the two boys, [K.B.] and [D.B.], had been molested through oral sex and - - and mutual fondling." (III, p. 656, 659-60). This statement was inconsistent with the trial testimony of the boys offered in this case and was also inconsistent with the two video interviews of K.B. introduced at trial. *See* Exhibits S-3 and D-2 (III, pp. 788-89, 1088-89).

Although defense counsel raised various hearsay objections throughout Detective Semmes' testimony, he did not object to the statements set forth above. No objection was made to Detective Semmes' statement that the boys indicated that oral sex had taken place. As for Detective Semmes' statement that the two boys made allegations of oral sex and mutual fondling to H.S., the following colloquy occurred:

32

Q: During that interview, did [H.S.] discuss whether or not her children had discussed these concerns with her in the past?

A: She was asked that question, yes, ma'am. She - - she was - - she was asked if - - if - -

MR. OUSTALET:

Objection.

THE COURT:

Come forward, please.

(DISCUSSION HELD AT THE BENCH.)

THE COURT:

It is hearsay.

MR. OUSTALET:

Hearsay.

THE COURT:

What's the exception?

MS. NAQUIN:

I'll rephrase the question.

THE COURT:

Thank you.

Sustain the objection.

(DISCUSSION HELD AT THE BENCH CONCLUDED.)

MS. NAQUIN:    (CONTINUING)

Q: This is where the hearsay exception applies and so we're not able to discuss what other people told - - what - - what you heard other people say.

So as a result of that interview with [H.S.], what did you learn?

33

A:     I learned that [H.S.] had walked in.  The lights were off.  [H.S.] indicated that the two were on separate beds far apart.  I learned that they were - - [H.S.] was advised that they had been discussing masturbation in the dark.  [H.S.] also indicated to me that her eldest son, [D.B.], was - - lied to her and set fires, and she indicated to me that he - - he was a problem child.  She also advised me that she was informed by both boys that this incident - - these incidents had occurred, but she didn't believe it.

Q:     Did your interview include the specific allegations that the boys had told to [H.S.]?

A:     Yes.

Q:     What did [H.S.] indicate to you?

MR. OUSTALET:

Objection.

MS. NAQUIN:

I'll - - I'll - -

MR. OUSTALET:

Hearsay.

MS. NAQUIN:

I'll rephrase.

THE COURT:

All right.  Thank you.

MS. NAQUIN:  (CONTINUING)

Q:     What - - what were the allegations that - - that were made?

A:     The allegations were that the - - the two boys, [K.B.] and [D.B.], had been molested through oral sex and - - and mutual fondling.

Q:     Was that consistent with what you understood that the boys had reported?

A:     That is consistent.

34

It is clear from the above colloquy that defense counsel did not object to the alleged hearsay statements of which Defendant now complains on appeal. Accordingly, a review of the allegations made in this assignment of error has not been preserved for appeal. La.Code Crim.P. art. 841.

## ASSIGNMENT OF ERROR NUMBER FOUR

In this assignment of error, Defendant alleges that the trial court erred in allowing the introduction of other crimes evidence before the jury. Appellate counsel challenges two instances where the trial court allowed the admission of other crimes evidence.

*Defendant's Prior Conviction for Indecent Behavior with a Juvenile*

Prior to trial, the state filed a notice of its intent to use Defendant's prior conviction of indecent behavior with a juvenile under La.Code Evid. art. 412.2. In the motion, the state asserted that this evidence was admissible "for the relevant purpose of the jury's credibility determination of the victim's testimony or choice to believe the victim." According to the documentation attached to the state's motion, Defendant was charged in 2001 with committing two counts of indecent behavior with a juvenile. In 2003, Defendant pled guilty to one count of indecent behavior with a juvenile and the state dismissed the second count. Additionally, the documentation included a minute entry from 2005 showing that the probation being served by Defendant for the indecent behavior with a juvenile conviction was revoked.

Prior to jury selection, the state orally set forth the motion before the court. In response to the state's motion, defense counsel stated the following:

MR. OUSTALET:

Very brief response to that, Your Honor. First of all, according to Louisiana Code of Evidence Article 412.2, this would be admissible, could be admissible, and according to the motion for purposes of - - and I'm not quite sure. I may need some clarification from Ms. Naquin about it. It states that for the relevant purpose of the jury's credibility determination of the victim's testimony or choice to believe the victim.

I might could understand how it would be relevant regarding the credibility of the defendant should he testify, and if that's actually what the argument is, then my response to that would be we won't know anything and it shouldn't be - - the Court won't be able to make a determination unless and until he makes a decision to testify.

With regard to that information just being readily admissible, Article 412.2 specifically refers to it may be admissible, may be considered for its hearing on any matter to which it's relevant subjecting to the balancing test provided in Article 403.

THE COURT:

Right.

MR. OUSTALET:

403, of course, is the - - the all important test that says although relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or consideration of undue delay or waste of time.

This is exactly what Article 403 is meant to exclude. You have someone that's on trial for an alleged sexual offense, and by presenting evidence of another conviction, you're asking the jury to convict him because he's already a sex offender, and it's highly prejudicial to him because there is no connection between the case that he was convicted on and the case that he's going to stand trial on. The State has no info- - - no information that's - - they haven't even tried to present anything that shows motive, lustful disposition, any of the things that are required. They just want to introduce that.

And under 403, just strictly to say this gentleman's on trial for a sex offense, oh, and by the way, he's previously been convicted of a sex offense, that is highly prejudicial, and it leads to a high probability that a jury may convict just because he's already been convicted of a sex offense, and for that, we think that that should be inadmissible.

In response, the State asserted the following:

MS. NAQUIN:

      Mr. Oustalet's argument would be faulty in that if that would be the case then there would be no need for Article 412.2, which specifically says that introduction of a sex crime involving the commission of a crime against a child can be used to show a lustful disposition toward children.

      In this case, the allegation is that there are children victims; therefore, this can be used for the jury to consider the credibility of the victims. It's not a credibility determination of the defendant. It's - - it's - - it's not - - the article does not specifically say that it can only be used should the defendant testify. It is used to help the credibility - - to help the jury make the determination of the credibility of the victim. They can use the minutes of a prior conviction showing that there are prior children victims to corroborate the children's allegation of this new trial.

After hearing the arguments of both counsel, the trial court found the evidence was admissible. Defense counsel then stated that he did not see where La.Code Evid. art. 412.2 provided for the admissibility of such evidence to prove the credibility of a victim. Defense counsel even went so far to say, "And I - - I don't have any problem if the Court or - - or the state can point out where it says that that's the purpose of - -". The trial court and defense counsel then had the following colloquy:

THE COURT:

      All right. I'm going to note your objection, Mr. Oustalet, that - - I don't see it specifically says that language in 412.2. You are correct, okay. All right. However, 412.2 says when an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of 17 at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition of children may be admissible.

I'm making my ruling today that it is admissible because he was found guilty of indecent behavior with a juvenile, all right, and that is the reason for my decision at this time.

MR. OUSTALET:

I understand, Your Honor, and just for clarification and with all due respect - -

THE COURT:

Sure.  Yes, sir.

MR. OUSTALET:

- - just because I know how the appellate process works, unfortunately.  In reading that, the Court read everything up until may be considered for the hearing on any matter to which is relevant subject to the balancing test provided in Article 403.

THE COURT:

403.

MR. OUSTALET:

And our objection is that under [the] Article 403 balancing test, it should not be admissible.  So I just want to clarify that that's what our objection is based on.

THE COURT:

Yes, sir.  We'll note your objection for the record, and the Court has - - has done the balancing test and maybe I did not state it for the record.  But the Court finds that in this case since it's dealing with children under the age of 17, that it's going to be admissible.

Prior to the introduction of testimony, defense counsel again raised the other crimes evidence issue, this time alleging that count two should be redacted from the bill of information of the previous offense since count two had been dismissed. Later during trial, the trial court ordered count two to be redacted from the document.  The documents filed into evidence as S-5 include the following:  1)  a bill of information charging the Defendant with committing indecent behavior with an eight-year-old on January 29, 2001; 2)  the minute entry of Defendant's guilty

plea to the charge;  3)  the written guilty plea form;  and 4)  the notice registration of sex offenders form.[4]  Before the documentation was introduced and published to the jury, the trial court gave the jury the following limiting instruction for the consideration of such evidence:

THE COURT:

Ladies and gentlemen, we're going to proceed shortly with additional witnesses.  However, at this time, I'm going to ask that you listen to me very carefully.  Evidence that a defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for limited purposes.  The sole purpose or purposes for which such evidence may be considered is whether it tends to show guilt, knowledge, absence of mistake or accident, intent, system, motive, identity, or to show a lustful disposition towards children.  Remember, the accused is on trial only for the offense charged.  You may not find him guilty of this offense merely because he may have committed another offense.

During his testimony, Defendant stated the following in an effort to explain his prior conviction:

A.    This - - this incident happened on a riding lawnmower when I was about 18 years old, and it involved the girl I was with at the time, it was her cousin's daughter.  She was eight years old.  And she tended to like to ride on the lawnmower while I was cutting grass, and she was sitting on my leg with her legs in between my legs, and I had my arms around her cutting the grass on the lawnmower.  And then I come to turn.  I pulled my arm from around her, cut the wheel, and the front tire hit a bump, and she fell backwards, and I turned and caught her, and I got accused of touching her breast.  And I stopped the lawnmower out of fright because if she - - if I would have let her fall, she would have got her arm or leg cut off.  And at the same time, she freaked out and took off.  I freaked out and cut everything off and tried to regain my thoughts, and a couple of hours later, I got questioned by the police.

According to Defendant, the police accused him of fondling the eight-year-old's breasts.

---

[4]We note that the minute entry of the guilty plea lists two counts of indecent behavior with a juvenile but states that count two was dismissed.  No issue has been raised, however, as to the mention of count two in the minute entry.

Although Defendant objected to the admissibility of S-5 on several different grounds at trial, the only ground alleged on appeal is that the trial court failed to conduct the balancing test required under La.Code Evid. art. 403. As set forth above, the trial court stated that it did conduct a balancing test in this case.

Louisiana Code of Evidence Article 412.2 governs the admission of similar crimes, wrongs, or acts in sex offense cases. The article provides, in pertinent part:

> A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

The supreme court has stated the following regarding the standard of reviewing the admissibility of evidence under La.Code Evid. art. 412.2:

> A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *State v. Cosey*, 97-2020 (La. 11/28/00), 779 So.2d 675, 684. This same standard is applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.2. *State v. Merritt*, 04-204 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1085, *writ denied*, 04-1849 (La. 11/24/04), 888 So.2d 228; *State v. Humphries*, 40,810 (La.App. 2 Cir. 4/12/06), 927 So.2d 650, 656, *writ denied*, 06-1472 (La. 12/15/06), 944 So.2d 1284.

*State v. Wright*, 11-141, pp. 10-11 (La. 12/6/11), 79 So.3d 309, 316. The supreme court further stated that "Article 412.2 was enacted to loosen restrictions on 'other crimes' evidence, and to allow evidence of 'lustful disposition' in cases involving sexual offenses." *Id.* at 317. In weighing the probative value versus the prejudicial effect of the other crimes evidence before it, the supreme court looked at the similarities between the other crimes evidence and the facts presently before it. *Id.* Finding the similarities between the two acts "were sufficiently probative to support the admission" of the other crimes evidence, the supreme court noted that

40

the "evidence demonstrates defendant had a propensity for sexual activity with adolescents where he held a position of authority, and where the adolescent children were in his household." *Id.* at 317-18.

In the present case, the prior crime of indecent behavior with a juvenile involved the eight-year-old daughter of the cousin of Defendant's girlfriend at the time. The victim in the present case was also eight years old and was the son of Defendant's girlfriend. Although the method in which the prior offense was committed is different than the method in which the present offense was committed, the two crimes were sufficiently similar to demonstrate Defendant's propensity toward young children of whom he gains access through his girlfriends.

In *Wright*, the supreme court found that the other crimes evidence was not so prejudicial as to warrant exclusion. The court cited the following explanation of the balance between the probative value of evidence and its prejudicial effect:

> Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.

*Id.* at 318 (quoting *State v. Rose,* 06-402, p. 14 (La. 2/22/07), 949 So.2d 1236, 1244).

Considering the limiting instruction given by the trial court in this case along with the victim's own testimony, we find the admission of the other crimes evidence did not "lure" the jury into finding Defendant guilty of the charged offense. The victim's testimony alone was sufficient to find Defendant guilty of count two. Furthermore, the other crimes evidence did not lure the jury into

41

finding Defendant guilty of count one as the jury returned a not guilty verdict as to that count. Thus, the prejudicial effect of Defendant's prior conviction for indecent behavior with a juvenile did not outweigh its probative value.

Finally, we note that even if the other crimes evidence was erroneously admitted, any error would be harmless. As this court recently stated, "it is well established jurisprudence in Louisiana that inadmissible other-crimes evidence is subject to a harmless error analysis." *State v. Barnes*, 13-576, p. 3 (La.App. 3 Cir. 12/11/13), 127 So.3d 1070, 1073, *writ denied*, 14-43 (La. 6/13/14), 140 So.3d 1188. As a practical guide, Louisiana courts have adopted the harmless error test announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824 (1967):

> *Chapman* tests whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24; 87 S.Ct. at 828. An error did not "contribute" to the verdict when the erroneous trial feature is unimportant in relation to everything else the jury considered on the issue. *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991), *overruled as to standard of review for erroneous jury instructions in Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).
>
> *Chapman* was refined in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The *Sullivan* inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id.*, 508 U.S. at ____, 113 S.Ct. at 2081. This Court adopted the *Sullivan* refinement of *Chapman*. *See State v. Code*, 627 So.2d at 1384; *State v. Bourque*, 622 So.2d at 241 fn. 20.

*State v. Johnson*, 94-1379, pp. 13-14 (La. 11/27/95), 664 So.2d 94, 100.

Considering K.B.'s own testimony and the fact that the jury found Defendant not guilty of count one, we find the jury's guilty verdict as to count two was "surely unattributable" to the admission of Defendant's prior conviction for indecent behavior with a juvenile, even if that evidence was erroneously admitted.

42

Thus, the trial court did not err in admitting the evidence of Defendant's prior conviction, or, even if the evidence was erroneously admitted, the error was harmless.

*Evidence of a Criminal History Check Performed on Defendant*

Appellate counsel also argues that the trial court erroneously denied Defendant's motion for mistrial when Detective Semmes referred to Defendant's "criminal history check." Appellate counsel asserts that the reference to Defendant's criminal history report was improper and added to the unduly prejudicial effect of the other crimes evidence admitted in the case.

A mistrial may be granted when a legal defect exists in the proceedings "which would make any judgment entered upon a verdict reversible as a matter of law[.]" La.Code Crim.P. art. 775(A)(3). Thus, the introduction of evidence of other crimes is a valid basis for a motion for mistrial.

> [M]istrial is a drastic remedy that is warranted only when the defendant has suffered substantial prejudice such that he cannot receive a fair trial. . . . The determination of whether actual prejudice has occurred lies within the sound discretion of the trial judge; this decision will not be overturned on appeal absent an abuse of that discretion.

*State v. Weary*, 03-3067, p. 36 (La. 4/24/06), 931 So.2d 297, 321, *cert. denied*, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006) (citations omitted). The denial of a motion for mistrial on the basis of the introduction of other crimes evidence is subject to a harmless error analysis. *State v. Johnson*, 94-1379 (La. 11/27/95), 664 So.2d 94. An error is harmless when the "verdict actually rendered was surely unattributable to the error." *Id.* at 102 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).

During the state's questioning of Detective Semmes, the state asked the detective if he ran any kind of records' check on Defendant. The detective responded, "The criminal history check was done on Mr. Pontiff, and his - - his vital information was obtained." Defense counsel did not object until the state asked the detective to read from a report. Defense counsel objected, stating that the report was hearsay. The trial judge agreed with defense counsel and told the state to lay a foundation. Several more questions were asked concerning whether a criminal history was done, but at no time did the detective testify as to what the report revealed. When the state moved on to another line of questioning, defense counsel objected as follows:

MR. OUSTALET:

Before we - - before we get into this next portion, I need to make an objection and a motion for a mistrial. I need to make sure I'm doing it now because there's issues with contemporaneously making the motion. My motion for a mistrial is based on the fact that the State has produced a witness who has talked on the witness stand in front of the jury about a criminal history report of the defendant and has implied that the defendant has a criminal history, and that's improper. He specifically testified that it's information that's placed in at the time of arrest, which indicates he's been arrested. He specifically puts in that it's information that's put in by police officers.

So I'm going to move for a mistrial that they have presented evidence that's inflammatory to Mr. Pontiff by providing information to the jury about a criminal history report that would exist on him.

The state responded as follows:

MS. NAQUIN:

My response is that he also testified that it's information that's given by any public records, including the officers, and so it does not specifically only include any kind of arrest. It also includes other things, such as stolen vehicles. And so that in and of itself is not a - - you can't draw only the conclusion that there is any kind of criminal history regarding that.

44

The trial court denied the motion for mistrial.

On appeal, appellate counsel simply asserts that "[t]he references to the criminal history report were improper and added to the unduly prejudicial effect of the other crimes evidence admitted in this case." Defendant has failed to show that the state's reference to a "criminal history check" was an improper reference to other crimes evidence or had a prejudicial effect on Defendant's case. Thus, the reference to a "criminal history check", if error at all, was harmless. Defendant has failed to show that the trial court erred in denying his motion for mistrial.

Accordingly, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER SIX

In this assignment, appellate counsel asserts that the sentence imposed is excessive. Defendant was convicted of sexual battery and sentenced to thirty years at hard labor, twenty-five years of which must be served without the benefit of probation, parole, or suspension of sentence. Because K.B. was under the age of thirteen, Defendant was exposed to a sentence of not less than twenty-five years nor more than ninety-nine years at hard labor, with at least twenty-five years to be served without benefit of parole, probation, or suspension of sentence. *See* La.R.S. 14:43.1(C)(2). Defendant filed a motion to reconsider sentence, alleging only that the sentence was excessive. The trial court denied the motion to reconsider without a hearing.

In his motion to reconsider sentence, Defendant's sole contention was that his sentence is excessive. Likewise, on appeal, Defendant's sole argument is that his sentence is excessive. The law is well settled concerning the standard to be used in reviewing excessive sentence claims:

45

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331.

. . . .

[E]ven when a sentence falls within the statutory sentencing range, it still may be unconstitutionally excessive, and in determining whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has suggested that several factors may be considered:

[An] appellate court may consider several factors including the nature of the offense, the circumstances of - the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

> *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061.

*State v. Decuir*, 10-1112, pp. 11-13 (La.App. 3 Cir. 4/6/11), 61 So.3d 782, 790-91 (alterations in original).

At the sentencing hearing, the trial court stated the following regarding Defendant's sentence:

THE COURT:

All right. Mr. Pontiff, you stand before the Court today for sentencing after having been convicted by the jury for the crime of sexual battery. The Court ordered a Pre-Sentence Investigation, which has been received and carefully studied. The Court has considered the following factors and the nature of the present offense in determining an appropriate sentence and has made the following findings regarding your sentence.

Sexual Battery, a violation of Louisiana Revised Statute 14:43.1, normally carries with it a possible sentence of imprisonment, with hard labor, with the Department of Corrections, for not less than 25 years nor more than 99 years. At least 25 years of the sentence imposed shall be served without benefit or parole, probation, or suspension of sentence.

The Pre-Sentence Investigation indicates that you're 30 years of age, born on July 30th, 1983. You were born in Lafayette, Louisiana, and attended Erath High School before leaving school after completing the eleventh grade. You have never been married or had any children. Your employment history is primarily in the offshore field where you worked as a welder's helper, a sheet metal worker, and a machinist.

The Pre-Sentence Investigation states that you do have a sealed juvenile criminal history. You also have an adult criminal history. You were arrested in April of 2001 for contributing to the delinquency of a juvenile and burglary. You were arrested in November of 2001 for indecent behavior with a juvenile for which you received a sentence - - a seven year sentence. The sentence was partially suspended; however, your probation was revoked, and you were ordered to serve the original sentence in 2005. In December of 2001, you were arrested for two counts of simple burglary. You received a sentence of two years and probation. Your probation was terminated unsatisfactorily in 2003.

According to the Pre-Sentence Investigation, on January the 27th of 2014, the Jefferson Davis Parish District Attorney's office charged you with a Bill of Information with one count of Oral Sexual Battery and one count of Sexual Battery, both counts involving minors. According to the Jennings Police Department's report, on August 11th of 2012, officers responded to a call regarding a child molestation offense. The call was made - - was made by D.B., one of the victims named in the Bill of Information. After interviews by the police and the Office of Community Services of you, D.B., D.B.'s mother, and his younger brother, K.B., the police arrested you.

I'm going to file the Pre-Sentence Investigation into the record for further reference, if necessary.

In reviewing the Pre-Sentence Investigation, the Court takes note of the fact that you are 30 years of age. However, the Court can find no other mitigating factors. In fact, this is your second felony conviction involving inappropriate sexual conduct with minors. This has been taken into consideration in determining the sentence in this matter.

After reviewing the sentencing guidelines under Code of Criminal Procedure Article 894.1, the Court finds that you are in need of correctional treatment and that a lesser sentence would - - or will deprecate the seriousness of your offense. Furthermore, the Court believes that your predatory conduct in seeking out children, in both the instant offense and in the past, demand that you serve a lengthy sentence as a result.

Therefore, the Court sentences you to the Department of Corrections, State of Louisiana, to be imprisoned at hard labor for a period of thirty-years, of which 25 years must be served without the benefit of probation, parole, or suspension of sentence. The Court will order that you will receive credit for all time previously served.

On appeal, appellate counsel takes issue with the trial court's determination that Defendant is a predator seeking out young children.

Appellate counsel further asserts that the facts of the case are not so egregious as to warrant imprisonment for thirty years. The more appropriate sentence, appellate counsel argues, would have been the minimum sentence of twenty-five years without benefit of probation, parole, or suspension of sentence.

Considering Defendant's prior criminal history, we find the near-minimum sentence is not excessive. A review of the jurisprudence further supports this finding. In *State v. Greenberry*, 14-335 (La.App. 4 Cir. 11/19/14), 154 So.3d 700, the defendant was convicted of sexual battery and sentenced to forty-five years at hard labor, with the first twenty-five years to be served without benefit of parole, probation, or suspension of sentence. Greenberry committed sexual battery of his live-in girlfriend's ten-year-old daughter by inserting his finger into the victim's vagina. *Id.* The victim in *Greenberry* also testified that the defendant performed oral sex on her. *Id.*

In *State v. Duplantis*, 13-424 (La.App. 3 Cir. 11/27/13), 127 So.3d 143, *writ denied*, 14-283 (La. 9/19/14), 148 So.3d 949, the defendant was sentenced to life imprisonment for his conviction of the sexual battery of a six-year-old boy. Duplantis's victim said that Duplantis touched his private area four times. *Id.*[5]

In *State v. Evans*, 48,471 (La.App. 2 Cir. 12/18/13), 130 So.3d 965, the second circuit upheld a fifty-year sentence, twenty-five years of which was to be served without benefit of probation, parole, or suspension of sentence. The victim stated that Evans touched her private area "with his hands and his 'thing,'" and that Evans "stuck his 'thing' in her mouth". *Id.* at 966. The second circuit noted that Evans had two prior felony convictions for contributing to the delinquency of juveniles and molestation of juveniles, as well as three prior misdemeanor convictions and fourteen arrests. *Id.*

---

[5]In 2006, the penalty provision for sexual battery of a victim under the age of thirteen years was increased to not less than twenty-five years nor more than life imprisonment, with the first twenty-five years to be served without benefits. 2006 La. Acts No. 103, § 1. Then, in 2008, the legislature decreased the maximum penalty from life imprisonment to ninety-nine years. 2008 La. Acts No. 33, § 1.

We further note the supreme court's repeated admonition "that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case[.]" *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283 (citing *State v. Walker*, 00-3200, (La. 10/12/01), 799 So.2d 461; *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957; and *State v. Humphrey*, 445 So.2d 1155 (La.1984)). Considering the facts of this case, Defendant's prior criminal history, the jurisprudence, and the supreme court's admonition, we find the near minimum sentence imposed in the present case is not excessive.

Accordingly, this assignment lacks merit.

## DECREE

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**